Jeffrey Paul SLOAN, Plaintiff–Appellant,

v.

Paul DELO, Superintendent, Defendant–Appellee.

No. 94–2122.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1995.

Decided May 15, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 2, 1995.*

* Richard S. Arnold, Chief Judge, and McMillian, Circuit Judge, would grant the suggestion for rehearing en banc.

Douglas S. Laird, Kansas City, Missouri, argued, for appellant.

Michael Joseph Spillane, Asst. Atty. Gen., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, BRIGHT, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

Jeffrey Paul Sloan appeals from orders of the district court [1] denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254 and his motion to alter or amend the judgment. After Sloan was charged with the murder of his parents and two brothers, he was tried for the murder of his younger brother. He was convicted and sentenced to death. On appeal Sloan reasserts most of the claims rejected by the district court. We affirm.

## I.

The facts of the murders, and Sloan's role in them, are not in dispute and have been set out in detail by the Missouri Supreme Court. *State v. Sloan,* 756 S.W.2d 503 (Mo.1988) (en banc) (*Sloan I* ), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1174, 103 L.Ed.2d 236 (1989).

On December 11, 1985, Sloan, then nineteen, went into his parents' bedroom and shot them both while they slept. He then went to the living room and shot both of his brothers, first eighteen-year-old Timothy and then nine-year-old Jason. Timothy was shot as he attempted to rise from his bed, and Jason as he huddled beneath a blanket with which he had covered himself. Petitioner reloaded and returned to his parents' room and shot each of them again. Timothy, wounded but still alive, tried to escape out the front door, but petitioner shot him again and left his body lying in the front yard.

After the killings, Sloan went to work, where he called his girlfriend and asked her to go to his home and deliver a message to his father. His girlfriend and her mother discovered Timothy's body and contacted the authorities. The girlfriend's mother also called Sloan at work to tell him of the tragedy. He returned home and was taken to the county courthouse for questioning. Although he initially accused a man who had had an affair with his mother, Sloan confessed to the murders within hours. He gave two videotaped statements and led the authorities to the discarded weapon.

---

1. The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

The state charged Sloan with four counts of murder but later elected to try him only for the murder of Jason Sloan. The state requested the death penalty, and Sloan pleaded not guilty by reason of mental disease or defect. During the January 1987 trial, the state presented evidence that Sloan had killed the family after his father had discovered he was writing checks on his father's account without permission. Sloan did not testify, but his two videotaped statements were played. In them, Sloan stated that his father had physically abused his mother and the two older boys. Sloan also claimed that his mother had urged him repeatedly to kill the entire family: the father to stop his abuse, the mother because she thought she was dying of cancer, Timothy because she believed he was destined to become abusive, and Jason to spare him the pain of coming from an abusive household. Petitioner's psychological expert testified that Sloan was suffering from double insanity and that he was under the control of his mother at the time of the killings. Sloan's defense was based on this mental disease or defect, and he argued at trial that he was not legally responsible for his actions. The state did not call a psychological expert, but reports by two doctors were admitted without objection by the defense. Both concluded that Sloan was not suffering from a mental disease or defect. After more than three days of testimony during the guilt phase of the trial, the jury found Sloan guilty of first degree murder.

At the penalty phase, the state presented no new evidence, and Sloan's attorney called only two witnesses. Both were Sloan's paternal aunts, one his father's sister and the other his father's sister-in-law. Neither corroborated Sloan's claims that his father was abusive or that his mother had urged him to kill the family. After six hours of deliberation, the jury found two aggravating circumstances: depravity of mind and commission of a killing while engaged in another unlawful homicide. It found none of the five mitigating circumstances on which it had been instructed. The jury returned a verdict of death on January 30, 1987. Sloan then filed

a motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The judge denied the motion after a hearing on April 3, 1987, and sentenced Sloan to death.

Sloan appealed directly to the Missouri Supreme Court, which affirmed the conviction and sentence on July 26, 1988. *Sloan I,* 756 S.W.2d 503. Sloan also sought state post conviction relief under Missouri Supreme Court Rule 29.15. He filed an original and three amended motions under the rule. The first was filed pro se. Appointed counsel prepared the three amended motions, but the last two were submitted after the August 26, 1988 deadline set by the court. In establishing that date, the court had already granted the one thirty day extension permissible under the rule. After an evidentiary hearing, the circuit court of Clay County overruled all of Sloan's claims, including those in the final two motions, on December 19, 1988.

Sloan appealed the denial of post conviction relief to the Missouri Supreme Court, which rejected his claims on November 14, 1989. It affirmed on the merits as to the original and first amended motions. It also affirmed as to the second and third amended motions, finding all claims in them were procedurally barred because the motions were untimely. The second amended petition was also barred because it was unverified. *Sloan v. State,* 779 S.W.2d 580 (Mo.1989) (en banc) (*Sloan II*), cert. denied, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990).

Sloan then filed a petition for a writ of habeas corpus in federal district court on April 3, 1990 and received a stay of execution the same day.[2] He amended the petition on July 13, 1990 and then again eighteen months later, ultimately alleging seventeen claims for relief. The district court denied Sloan's second amended petition in July 1993. *Sloan v. Delo,* No. 90–0324–CV–W–2, (W.D.Mo. July 21, 1993). Sloan then moved to alter or amend the judgment under Rule 59(e). In the motion, Sloan renewed his request for an evidentiary hearing, claiming that he could

---

**2.** The named defendant and appellee is Paul Delo, superintendent of Missouri's Potosi Correctional Center.

present witnesses who would have testified at trial if called. These people allegedly would have corroborated Sloan's descriptions of his father's abuse and of his mother's depression and influence. His motion was denied by the district court on March 14, 1994.

Sloan now appeals in some form most of the claims he raised in the district court. The claims may be summarized as follows: eight claims of ineffective assistance of counsel, several of which involve his lawyer's alleged failure to investigate and present mitigating evidence; an eighth amendment claim related to a vague jury instruction on the depravity of mind aggravating circumstance; a due process claim that he was forced to use peremptory strikes to exclude three prospective jurors who should have been stricken for cause; and eighth and fourteenth amendment claims challenging a jury instruction on mitigating circumstances and the prosecutor's closing argument in the penalty phase. To overcome procedural default of several of these claims, Sloan argues that the state ground of decision was inadequate because of overly restrictive deadlines for the state post conviction process.

## II.

Eight of Sloan's claims allege that his attorney did not provide effective assistance of counsel. Under the sixth amendment, competent representation is an important right at trial, helping to insure the reliability of criminal proceedings. *Strickland v. Washington*, 466 U.S. 668, 686–87, 104 S.Ct. 2052, 2063–64, 80 L.Ed.2d 674 (1984). An individual may be entitled to habeas relief where he can demonstrate that counsel's performance was deficient and that it prejudiced the outcome. *Id.* at 695, 700, 104 S.Ct. at 2068, 2071. If a state court finds that a defendant defaulted a claim under a state procedural rule, however, federal courts generally will not consider it on habeas review. A default under a state procedural rule bars consideration of a federal claim presented to the state courts if the last state court to review the claim specifically rested its decision on an adequate and independent state ground unless the petitioner can demonstrate

either cause and prejudice, or a "fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 260–63, 109 S.Ct. 1038, 1042–44, 103 L.Ed.2d 308 (1989). A federal court also will not hear a claim if the petitioner has not exhausted all available state remedies unless further litigation in the state courts would be futile or unless the state waives this requirement under certain circumstances. 28 U.S.C. § 2254(b); *see Duvall v. Purkett*, 15 F.3d 745 (8th Cir.1994). Some of Sloan's claims fail because they were not properly presented to the state courts, others because he cannot show deficient performance and prejudice.

### A.

Sloan first raised two of his ineffective assistance of counsel claims in his third amended motion for state post conviction relief under Missouri Supreme Court Rule 29.15. Sloan argued that he was denied effective assistance of counsel because his trial lawyer failed adequately to investigate potential mitigating evidence. He asserts that several witnesses would have testified if called about the extent of his mother's influence over him, about her depression, and about his father's abusiveness. Sloan also claimed in that motion his counsel was ineffective for not objecting to improper statements by the prosecutor during closing argument.[3] The Missouri Supreme Court held that these claims were procedurally barred because they had not been timely filed. *Sloan II*, 779 S.W.2d at 581–82.

Sloan argues that the Missouri Supreme Court's decision to bar these claims was not based on an adequate state ground and should not be recognized by the federal courts. He asserts that the deadlines under Rule 29.15 are so restrictive and are enforced so stringently that they are hostile to federal rights. He also claims that the Rule 29.15 requirement that he include all grounds for relief "known to him" was ambiguous at the time he filed his motions. The state counters that the rule is a valid means of attaining its legitimate goal of processing criminal appeals

---

**3.** The prosecutor's closing is discussed in section VI, *infra*.

and collateral attacks more efficiently. It also denies that the rule was unclear.

Rule 29.15 became effective on January 1, 1988, replacing prior Rule 27.26. Under Rule 27.26, a defendant could move for post conviction relief at any time. Under the new rule, however, the defendant is required to file a motion "within thirty days after the filing of the transcript in the appeal" if an appeal is taken. Rule 29.15(b). If the defendant files a timely pro se motion, the state circuit court appoints counsel, who has thirty days to submit an amended petition. Counsel can seek a single thirty day extension from the court. Rule 29.15(e)–(f). Under the new rule, therefore, a prisoner has a maximum of ninety days after the transcript is filed to complete the final amended motion.

Sloan fell under a transitional provision of Rule 29.15. Rule 29.15(m).[4] This subsection provided a post conviction filing deadline of June 30, 1988 for those, such as Sloan, who had been sentenced before the rule's effective date and who had not filed under the old rule. Sloan filed his pro se motion on June 24, 1988. Counsel was appointed, received the one available extension, and submitted the first amended motion on August 23, 1988, three days before the extended deadline. The second and third amended motions were filed in September and October. The circuit court ruled on all of the motions, but the Missouri Supreme Court found that to be error. It held that only one extension could be granted under the rule so the latter two motions were untimely, and all arguments first raised in them were waived. *Sloan II,* 779 S.W.2d at 581–82. The court rejected on the merits the four claims of ineffective assistance of counsel contained in the timely motions. Those four claims are discussed in subsection C, *infra.*

To overcome the procedural bar found by the Missouri Supreme Court, Sloan argues that Rule 29.15 is not an adequate state ground. The adequacy of a state procedure presents a question of federal law. *Williams v. Lockhart,* 873 F.2d 1129, 1131 (8th Cir.), *cert. denied,* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 333 (1989). As explained by the court in *Williams:*

> [I]f the state procedural rule is unclear, or has been inconsistently applied, or appears to be a new rule designed to thwart the assertion of federal rights in the very case under review, ... a federal habeas court[ ] might well conclude that such a rule of state law, valid though it may be for merely state law purposes, would not suffice to bar habeas review under the *Wainwright* doctrine.

*Id.* at 1131–32.[5] Sloan argues both that Rule 29.15 is unclear and that it thwarts the assertion of federal rights. If he is correct, 29.15 would not be an adequate state ground to bar consideration of the underlying claims.

Sloan argues that the Rule 29.15 time limits are hostile to federal rights because they have prevented hundreds of Missouri defendants from litigating their federal claims. He contends the restricted time periods preclude a thorough review of the record by either a defendant or post conviction counsel. He draws particular attention to the requirement that the final amended post conviction motion be filed within ninety days after the filing of the transcript on appeal.

In Sloan's case it is clear he had sufficient time to file his pro se motion. Because he fell under the transitional provision of Rule 29.15(m), he had over a year between his sentencing in April 1987 and the deadline in June 1988 to prepare his original post conviction motion. The June 1988 deadline for the filing of his motion was also almost

---

4. Rule 29.15(m) reads:

This Rule 29.15 shall apply to all proceedings wherein sentence is pronounced on or after January 1, 1988. If sentence is pronounced prior to January 1, 1988, and no prior motion has been filed pursuant to Rule 27.26, a motion under this Rule 29.15 may be filed on or before June 30, 1988. Failure to file a motion on or before June 30, 1988, shall constitute a complete waiver of the right to proceed under this Rule 29.15. If a sentence is pronounced

prior to January 1, 1988, and a prior motion under Rule 27.26 is pending, post-conviction relief shall continue to be governed by the provisions of Rule 27.26 in effect on the date the motion was filed.

5. In *Williams,* an Arkansas limitations period was an adequate procedural bar because it had been consistently applied by the state courts for years before the petitioner's claim arose. *Id.*

nine months after the transcript had been filed (October 13, 1987), rather than the thirty days provided for the standard case. He has not shown the rule's time limits provided him an inadequate state procedure.

 Sloan also argues that the sixty days available (with extension) to appointed post conviction counsel to prepare an amended motion is insufficient and therefore that Rule 29.15 is an inadequate state ground. The amount of time available under state law to post conviction counsel cannot alone support a successful challenge to the adequacy of a state procedure. There is no constitutional right to post conviction counsel. *Nolan v. Armontrout*, 973 F.2d 615, 617 (8th Cir.1992).[6] It would be inconsistent to conclude that a state's post conviction procedure is adequate if no counsel is provided, but inadequate if counsel is provided but given limited time to assess the claims.

Sloan also claims that Rule 29.15 is inadequate because it was an unclear new procedural rule. He argues that the requirement to raise all "known" grounds did not clearly include claims which he did not know about, but which he could have discovered. Rule 29.15(d) reads:

> Contents of Motion. The motion to vacate shall include every ground known to the movant for vacating, setting aside, or correcting the judgment or sentence. The movant shall verify the motion, declaring that he has listed all grounds for relief known to him and acknowledging his understanding that he waives any ground for relief known to him that is not listed in the motion.

Rule 29.15(e) discusses appointed counsel's role in insuring that the movant has included all "known" claims. Because the rule was being phased in at the time Sloan prepared his motions, no judicial interpretation of 29.15 was available to him.[7]

 To bar consideration of a defaulted claim on federal habeas, the procedural rule must have been "firmly established and regularly followed" when it was applied to the petitioner. *Ford v. Georgia*, 498 U.S. 411, 421–25, 111 S.Ct. 850, 857–58, 112 L.Ed.2d 935 (1991). Under some circumstances, a state procedure which is confusing may be inadequate to bar consideration of a claim in federal court. *See Ashby v. Wyrick*, 693 F.2d 789, 793–94 (8th Cir.1982). Petitioner relies on *Ashby* to support his argument. In that case, Ashby had dismissed his direct appeal on the advice of a fellow inmate rather than of counsel. In his Rule 27.26 motions Ashby repeatedly tried to raise his claims that he was denied both a direct appeal and effective assistance of appellate counsel. Subsequent state court decisions eventually made it clear that Missouri procedure required him to raise the claims in a motion to recall the mandate. Because Missouri law was "at least arguably confusing" about the appropriate recourse, this court found the claims were not barred. *Id.*

In contrast, a sensible reading of Rule 29.15 reveals that the meaning of "every ground known to the movant" must include claims based on facts which the defendant could reasonably discover. Read as a whole, the rule is clearly intended to expedite the review of criminal convictions. Consequently, the phrase Sloan claims is unclear is susceptible to only one reasonable interpretation. If movants were allowed to delay the filing of a claim by failing to investigate the predicate facts or legal theory, the purpose of the rule would be undermined.

 This case provides a useful example of this principle. The claims which the Missouri Supreme Court refused to consider all relate to counsel's performance before and at trial. Sloan's first claim of ineffective assistance is that his trial lawyer did not present

---

6. Sloan's reliance on *McFarland v. Scott*, —— U.S. ——, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), is misplaced. The *McFarland* Court held that because Congress created a statutory right to counsel for capital defendants during federal habeas proceedings, counsel should be appointed before a petition is actually filed to permit assistance in its preparation. *See* 21 U.S.C. § 848(q)(4)(B). That statute has no bearing on

any right to counsel provided by states as a part of their own post conviction processes.

7. Since Sloan filed his 29.15 motions, the Missouri Supreme Court has held that the "the purpose of Rule 29.15(d) is to discover and adjudicate all claims for relief in a single proceeding." *Kilgore v. State*, 791 S.W.2d 393, 395 (Mo.1990).

the testimony of several potential mitigating witnesses who might have corroborated his claims that his father was abusive and that his mother both was depressed and had great influence over him. Sloan knew at the time of trial that only two mitigation witnesses appeared during the penalty phase, his father's sister and sister-in-law. He also would have known that other individuals were aware of the alleged mitigating factors relating to the family circumstances. Sloan therefore knew the facts necessary to make out this ineffective assistance of counsel claim when he filed for post conviction relief. This was a "ground known to the movant," and the rule was stated clearly enough to constitute an adequate state procedural bar.

Sloan also argues that he had inadequate warning that the time limits of 29.15 would be enforced strictly because the Missouri Supreme Court had not yet ruled that the time limits in the rule are jurisdictional. Rule 29.15(b) reads in part: "Failure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under [it]." [8] Rule 29.15(f) provides that "[t]he court may extend the time for filing the amended motion for one additional period not to exceed thirty days." This language makes it clear that movants must include all claims in a timely petition and that the deadlines were to be enforced strictly.

■ Rule 29.15 is an adequate state ground to bar consideration of Sloan's claims which were untimely under the rule. These two untimely claims are not cognizable in a federal court unless Sloan can demonstrate cause and prejudice. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977). Because Sloan has not attempted to show cause for first raising two of his ineffective assistance claims in an untimely 29.15 motion, they are barred. We may not therefore consider whether trial counsel was ineffective in not presenting more mitigating evidence or in not objecting

to any improper statements in the prosecutor's closing argument.

### B.

The merits of two other claims of ineffective assistance cannot be reached because Sloan waived them by failing fairly to present them in the state courts. Sloan now argues that trial counsel was ineffective for failing to object to the use of his video statements at trial on the ground of his incompetence to waive his Miranda rights. He also claims that counsel failed to provide effective assistance because he did not investigate or use a diminished capacity defense. Sloan first explicitly raised his competence to waive Miranda in the first amended 29.15 motion, which was filed on time. The claim was rejected by the circuit court on the merits, but he failed to raise it on his 29.15 appeal to the Missouri Supreme Court. He did not raise the diminished capacity claim at any point in the state courts.

■ A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim. 28 U.S.C. § 2254(b); *Duvall v. Purkett,* 15 F.3d 745, 746 (8th Cir. 1994). If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default. *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 2557 n. 1, 115 L.Ed.2d 640 (1991). If a federal court is unsure whether a claim would be rejected by the state courts, the habeas proceeding should be dismissed without prejudice or stayed while the claim is fairly presented to them. *See Hampton v. Miller,* 927 F.2d 429, 430–31 (8th Cir.1991); *Fletcher v. Armontrout,* 733 F.Supp. 1348, 1355 (W.D.Mo.1990). If, however, it is clear that the state courts would find the claim to be procedurally barred and that a return to the state courts would be futile, the federal court may consider an unexhausted claim.[9] *Duvall,* 15 F.3d

---

8. Similarly, the transitional provision which applied to Sloan stated: "Failure to file a motion on or before June 30, 1988, shall constitute a complete waiver of the right to proceed under this Rule 29.15." Rule 29.15(m).

9. A federal court may also consider unexhausted claims in a habeas petition if the court accepts a state's waiver of the exhaustion requirement. Such a waiver is not favored because the exhaustion requirement is intended to channel claims to

at 746. A petitioner could then try to overcome any procedural default by showing cause and prejudice or actual innocence. *Hall v. Delo*, 41 F.3d 1248, 1250 (8th Cir. 1994).

Both the diminished capacity and *Miranda* claims are unexhausted because Sloan could have raised them in the Missouri Supreme Court on the 29.15 appeal, but did not. The diminished capacity claim also should have been raised in a 29.15 motion in the circuit court. We must therefore determine the interrelated issues of whether the Missouri courts would find them to be procedurally defaulted and whether any further proceedings in the state courts would be futile.

■ Raising the *Miranda* claim in the state courts at this point would be futile because it was procedurally defaulted under Missouri law when not raised on the 29.15 appeal. Where a claim is not presented for appellate review after having been argued in a post conviction motion, the state courts consider it abandoned. *O'Neal v. State*, 766 S.W.2d 91, 91 (Mo.) (en banc), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Although *O'Neal* was decided under the former post conviction relief Rule 27.26, there is no reason to believe the Missouri Supreme Court would reach the opposite conclusion under Rule 29.15. If Sloan were to raise this claim now, the state courts would find it procedurally barred.

■ A new 29.15 motion including the diminished capacity claim would also be futile. As discussed *supra*, the deadlines under 29.15 are jurisdictional. The facts necessary to make out the diminished capacity ineffectiveness claim were available to Sloan and appointed counsel when he filed his 29.15 motions. In view of the discussion of the rule's requirement that all discoverable claims be included in a timely 29.15 motion, we conclude that the Missouri courts would consider such a motion to be procedurally barred.

■ While there is a state habeas procedure under Missouri Supreme Court Rule 91, it would likely not be available to Sloan. If a state habeas petitioner fails to raise a claim on appeal or in a motion for post conviction relief under Rule 29.15 or Rule 24.035, the Missouri courts will not review it on habeas unless the claim raises a jurisdictional issue or presents an "issue of manifest injustice resulting from rare and extraordinary circumstances and warranting the relief requested." *State ex rel. Simmons v. White*, 866 S.W.2d 443, 444 (Mo.1993) (en banc).

■ Neither exception is satisfied here. Ineffective assistance of counsel does not affect a court's jurisdiction, and Sloan's claims do not represent the rare case of manifest injustice. Although the Missouri courts have not yet fully elucidated the injustice exception, it is clear that state habeas proceedings are not to be used in lieu of Rule 29.15 unless the petitioner can demonstrate that the claim was not "known to him" when he filed his 29.15 motions. *Id.* at 446–47. The *Miranda* claim was raised in a timely 29.15 motion, rejected by the circuit court on the merits, and then omitted on appeal. Sloan was clearly not unaware of the claim, and the reasonable inference is that he did not argue it on appeal because it was squarely rejected on the merits. *See id.* The ineffective assistance claim based on the failure to use a diminished capacity defense could have been raised in a timely 29.15 motion, and Sloan has presented no reason why it was not argued. A situation in which a habeas petitioner merely neglected to make a claim cannot be the "rare and extraordinary circumstance" envisioned by the Missouri Supreme Court, especially in view of its emphasis on the expeditious resolution of post conviction challenges and its corresponding reliance on a strict structure of deadlines. *See id.*

■ We conclude therefore that although these two claims are unexhausted, further

---

the state courts in the first instance. *Duvall*, 15 F.3d at 746–47 & n. 4. Here Missouri offered to waive the exhaustion requirement in its response to Sloan's second amended habeas petition. Be-

cause we conclude that any further proceedings in the state courts would be futile, however, we need not decide whether to accept the state's waiver.

litigation in the state courts would be futile.[10] We also conclude that the state courts would find both claims procedurally defaulted because they were not fairly presented during the 29.15 proceedings. Unless Sloan can demonstrate cause and prejudice or actual innocence, we cannot reach the merits. *Coleman,* 501 U.S. at 750–51, 111 S.Ct. at 2565. Aside from the challenge to the adequacy of Rule 29.15 rejected *supra,* Sloan does not argue cause for the failure to raise the Miranda claim in the 29.15 appeal and the omission of the diminished capacity claim from all phases of the 29.15 process. Although these claims are unexhausted, any recourse to the state courts would be futile. Since the claims are procedurally defaulted, we do not reach their merits.

## C.

■■■ Sloan makes several other ineffective assistance of counsel claims which are not procedurally barred. To prevail on any claim he must prove both that counsel's performance fell below an objective standard of reasonable competence and prejudice. *Strickland,* 466 U.S. at 695, 700, 104 S.Ct. at 2068, 2071; *see also, Lockhart v. Fretwell,* —— U.S. ——, ——, 113 S.Ct. 838, 842, 122 L.Ed.2d 180 (1993); *United States v. Thomas,* 992 F.2d 201, 204 (8th Cir.1993). To show prejudice, he must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■■■ Ineffective assistance claims are mixed questions of law and fact. Legal conclusions are reviewed de novo, state court findings of fact are presumed to be correct under 28 U.S.C. § 2254(d), and the district court's findings of fact are reviewed under the clearly erroneous standard. *Laws v. Armontrout,* 863 F.2d 1377, 1381–82 (8th Cir. 1988) (en banc), *cert. denied,* 490 U.S. 1040, 109 S.Ct. 1944, 104 L.Ed.2d 415 (1989).

Sloan claims that his trial counsel was ineffective for not locating and calling one of his mother's co-workers, Rachel Sanders, as a witness. He says she would have testified that his mother had told Sanders that his father was abusive; that Sloan and his mother had a very close relationship; and that Sloan was "always the one who took care of things for [his mother]." These conversations between his mother and Sanders took place two years before the murders.

■■■ During the 29.15 proceedings, the state circuit court found that counsel did not know of Sanders' existence, that he asked Sloan whom he should contact, and that Sloan did not name Sanders. These findings are presumptively correct. Given that Sanders was not an obvious potential witness and that Sloan did not name her, it was not unreasonable for counsel not to interview her. In any event, Sloan could not satisfy the prejudice requirement because the Missouri Supreme Court found that Sanders' reports of the mother's comments would have been inadmissible hearsay. *Sloan II,* 779 S.W.2d at 582. We are bound by the state court's interpretation of state law.

Sloan also claims that counsel was ineffective because he did not interview the two expert witnesses who prepared psychological reports for the state. Sloan claims that one of the experts would have confirmed part of the defense expert's diagnosis that Sloan was suffering from "shared personality disorder." Although neither state expert testified at trial, their reports were admitted during cross-examination of Sloan's expert. Sloan claims that had his lawyer done a reasonable investigation, counsel would have forced the state to call that witness before using his report.

■■■ The Missouri Supreme Court rejected this claim. "The motion court determined that counsel made a reasonable decision not to interview. The evidence shows that the attorney obtained and read the reports in

---

**10.** A motion to recall the mandate in the Missouri Supreme Court based on either of these claims would also be denied because that procedure is reserved for claims that appellate counsel rendered ineffective assistance or that the appellate court's ruling was in direct conflict with a

United States Supreme Court decision. *See Hall v. Delo,* 41 F.3d 1248, 1250 (8th Cir.1994); *see also O'Neal v. Delo,* 44 F.3d 655, 663–64 (8th Cir.1995). Neither category applies to either of these two claims.

question and correctly believed the two psychiatrists would not be called by the State to testify." *Sloan II*, 779 S.W.2d at 582. The state court's finding of fact regarding counsel's belief is presumptively correct under 28 U.S.C. § 2254(d). The reasonableness of that belief is reviewed de novo. *Jones v. Jones*, 938 F.2d 838, 843 (8th Cir.1991).

Under the circumstances, the attorney's performance was not deficient. He had read the reports and knew that neither expert believed Sloan was suffering from a mental disease or defect at the time of the murders. There was little reason for him to suspect any fruitful information would be gained by interviewing them. Counsel also reasonably could have believed that it was preferable to have the state's expert opinions come in by reports rather than by live testimony. The defense expert could also rebut their reports after they were admitted. Under that trial strategy it was not necessary to interview the experts. On the facts of this case, we cannot conclude that counsel's failure to interview the experts fell below the *Strickland* standard of reasonableness.

Sloan next claims that his attorney's closing argument in the penalty phase constitutes ineffective assistance of counsel because it was "incoherent, unorganized, and prejudicial." This claim is also without merit. The state circuit court found that Sloan's lawyer had prepared his closing and had a theme, that he pointed out two family members were willing to testify for Sloan, and that he read Carl Sandburg's "The Hangman" to remind the jurors of the gravity of their role. These state court findings are presumptively correct, and they show significant preparation by Sloan's counsel. Thus, Sloan must "establish by convincing evidence that the factual determination of the state court was erroneous" if he is to prove ineffective assistance. *McDowell v. Leapley*, 984 F.2d 232, 233 (8th Cir.1993) (quoting *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)). Although the closing apparently was not persuasive, a strategy need not be successful to be reasonable. Sloan has not presented sufficient evidence of deficient preparation or performance to overcome the presumption that the state court's

factual conclusions are correct. Counsel's performance was not deficient.

Sloan's final ineffective assistance claim is that his lawyer failed to preserve on direct appeal the issue of the vagueness of the depravity of mind jury instruction. *See* Section III, *infra*. Counsel did, however, challenge on direct appeal the sufficiency of the evidence to support the jury's finding of the depravity of mind aggravating circumstance, and the state acknowledges that the attorney's argument on direct appeal included vagueness of the instruction. The district court considered the underlying claim on the merits. We do also. Section III, *infra*. Any failure by counsel to raise the vagueness claim more explicitly on direct appeal to the Missouri Supreme Court did not deprive Sloan of full consideration of the claim. He therefore cannot demonstrate prejudice under *Strickland*. This final ineffective assistance claim is without merit.

### III.

Sloan claims that his sentence violates the eighth amendment because the trial court used an unconstitutionally vague jury instruction. The trial court instructed the jury on two aggravating circumstances which might be considered in deciding to recommend the death penalty. These were "whether the murder of Jason Sloan was committed while the defendant was engaged in the commission of another unlawful homicide of Tim Sloan" and "whether the murder of Jason Sloan involved depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible, or inhuman." The jury found that both aggravating circumstances applied. Sloan challenges the constitutionality of the depravity of mind instruction and thus the validity of his sentence.

The depravity of mind instruction as given is unconstitutionally vague because it had no qualification to temper the jury's discretion. *See Mathenia v. Delo*, 975 F.2d 444, 448–49 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1609, 123 L.Ed.2d 170. A state appellate court may cure an unconstitutionally vague instruction under the rule

applied in *Mathenia* by establishing and then later applying a valid limiting construction. The district court concluded that the Missouri Supreme Court had cured the instruction's vagueness on direct appeal, but we disagree.

Although the Missouri courts had limited the depravity of mind instruction prior to Sloan's crime, *see State v. Preston*, 673 S.W.2d 1 (Mo.1984) (en banc), *cert. denied*, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), the Missouri Supreme Court did not apply that limiting construction in his case. The court expressly refused to rely on depravity of mind in affirming Sloan's sentence: "We express no opinion as to the sufficiency of the evidence to support the depravity of mind aggravating circumstance." [11] *Sloan I*, 756 S.W.2d at 511 n. 6. Instead, the court relied on the jury's finding of the other aggravating circumstance involving multiple murders to support the death sentence. *Id.*

■ Use of the vague depravity of mind instruction on aggravating circumstances and the failure of the state appellate court to cure it does not necessarily invalidate the sentence. The outcome depends on how Missouri uses aggravating circumstances in deciding whether to impose the death penalty. In some states, aggravating circumstances are expressly weighed against any mitigating

circumstances. If the former outweigh the latter, the death penalty is applied. In those jurisdictions, the invalidation of an aggravating circumstance is of tremendous import because the removal of that factor from the equation might change the result. *See Stringer v. Black*, 503 U.S. 222, 230–32, 112 S.Ct. 1130, 1137, 117 L.Ed.2d 367 (1992).

■ In contrast, the sentencing process in Missouri does not involve a simple weighing of aggravating and mitigating circumstances. Once a single aggravating circumstance is found in Missouri, the factfinder is free to consider all the evidence to determine whether the death penalty is appropriate. Mo.Rev.Stat. § 565.030.4 (1986).[12] *See Stringer*, 503 U.S. at 232, 112 S.Ct. at 1137 ("In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty."); *Feltrop v. Delo*, 46 F.3d 766, 771 (8th Cir.1995); *Sidebottom v. Delo*, 46 F.3d 744, 756 (8th Cir.1995); *LaRette v. Delo*, 44 F.3d 681, 686–87 (8th Cir. 1995).[13]

■ In a nonweighing state such as Missouri, a finding of at least one aggravating circumstance is a threshold requirement to imposing a death sentence. Here the jury

---

**11.** By statute, the Missouri Supreme Court reviews every death sentence to insure that the penalty is not disproportionate when compared with other cases in which a death sentence was or could have been imposed. Mo.Rev.Stat. § 565.035 (1986). As a part of that review in this case, the Missouri Supreme Court suggested that the jury could have found that Sloan psychologically tortured Jason because he was the last to be shot and had time to consider his impending death. *Sloan*, 756 S.W.2d at 511. The depravity of mind instruction can pass the constitutional test if it is construed to require torture, *see Mathenia*, 975 F.2d at 449–50, but the court's reference to what the jury "could have reasonably believed" is insufficient to overcome its earlier explicit refusal to address the sufficiency of the depravity of mind evidence. Unless a state court unequivocally applies a limiting construction, the constitutional infirmity is not cured.

**12.** The relevant statute at the time of trial, Mo. Rev.Stat. § 565.030.4 (1986), read in part:

The trier shall assess and declare the punishment at life imprisonment without eligibility

for probation, parole, or release except by act of the governor:
(1) If the trier does not find beyond a reasonable doubt at least one of the statutory aggravating circumstances set out in subsection 2 of section 565.032; or
. . . .
(4) If the trier decides under all of the circumstances not to assess and declare the punishment at death.

**13.** Because Missouri is a nonweighing state, Sloan's reliance on *Espinosa v. Florida*, —— U.S. ——, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), is misplaced. *Espinosa* involved Florida which is a weighing state. Furthermore, Florida's sentencing scheme splits the weighing responsibilities between the jury and the trial judge. *Id.* at ——, 112 S.Ct. at 2928. "[I]f a weighing state decides to place capital-sentencing authority in two actors rather than one, neither actor must be permitted to weigh invalid aggravating circumstances." *Id.* at ——, 112 S.Ct. at 2929. In Missouri, neither the judge nor the jury weighs, and the issues in this case are different from *Espinosa*.

found one valid aggravating circumstance, that of multiple murders, and was free then to consider all evidence in aggravation and mitigation. The jury's penalty phase verdict in this case is therefore reliable despite the unconstitutionally vague instruction on the other aggravating factor, and the use of that instruction was harmless.

## IV.

Sloan argues that his due process rights were violated when his trial counsel was forced to use three peremptory challenges to strike certain members of the jury panel. During voir dire, all three people seemed to state that they would apply the death penalty automatically if they found someone guilty of first degree murder.[14] On further questioning, however, all three said they could consider both the death penalty and life without parole, the only two options available for first degree murder in Missouri.[15] Sloan's counsel moved to have all three stricken for cause, but the motions

14. Exchanges between defense counsel and these prospective jurors included:

Mrs. Davison:
Q: So if you got to the point where you believed Jeffrey guilt [sic] of first degree murder, then you feel that you'd have to vote for death, is that correct?
A: Yes, I think that is correct.
Mr. Blair:
A: If the facts were proven that the man was guilty and I voted guilty, then I would have to vote for capital punishment.
Mrs. Jaynes:
Q: Well, let's do it this way, once you determined that it's first degree murder as the charge is—
A: Yes.
Q: —would your decision be death?
A: Yes.
Q: And then you wouldn't have any qualms at all with that decision?
A: No.
Q: And it wouldn't be life without parole?
A: (No response)
Q: Come on, be honest.
A: No.
Q: .... And, so, you don't feel, if I'm correct, that once you voted guilty of first degree murder, that in your heart that there could be any other sentence but death, do you?
A: Correct.

15. The exchanges between the prosecutor and the challenged jurors included:

Mrs. Davison:
A: If you got to that stage where you said guilty of murder in the first degree, then I would say death because that's the way I feel.
 ....
Q: In other words, if the judge instructed you that you were to consider both life in prison without parole or death, you couldn't follow the judge's instructions and you'd have to give death?
A: Well, no, sir, I swore that would follow the judge's instructions.
 ....
Q: .... Now, the question is, Mrs. Davison, ... can you conceive of a fact situation under which you could return a verdict of life in prison without parole, depending on what the facts are?
A: Yes, sir, I could conceive of that. But, it, this is a very difficult thing at this time to say, because I don't know.
Q: You don't know what the facts are?
A: No.
 ....
Q: I think I understand now. You could conceive of a fact situation under which you could recommend life in prison without parole to somebody who has been convicted of murder in the first degree?
A: Yes.
 ....
A: .... I'm not saying that I am so hard headed that I'm gonna say it's going to be death, period.
Q: Okay.
A: Because it's not.
Q: So, you could consider both options?
A: Yes.
Q: And the reason why you can consider both options is at this point you haven't heard the facts?
A: True.
Q: And you haven't said, I'm so for the death penalty that I will always go death, it just depends on the facts?
A: Right.
Mr. Blair:
Q: ... If you found [the defendant] guilty of murder in the first degree in the first stage, would you have to give him death, or could you consider life without parole as one of the possibilities?
A: Yes, I could.
Q: You could consider life without parole?
A: Yes.
Q: Did you understand [the defense attorney's] question when he asked you that?
A: Not completely.
Mrs. Jaynes:
Q: So, could you conceive, Mrs. Jaynes, of a fact situation under which you could recommend or vote life without parole?
A: Yes, sir, I could.
 ....
Q: So, at this point, Mrs. Jaynes, you haven't excluded from your consideration either one of the punishments, is that a fair statement?

were denied. After a full panel of potential jurors was assembled, defense counsel used peremptory challenges to exclude the three. Sloan argues that the jurors should have been stricken for cause and that it was a due process violation to force him to use peremptory strikes on them.[16]

■ Peremptory strikes are created and governed by state law, and the due process clause guarantees only that the state must apply its own rules fairly. "[T]he 'right' to peremptory challenges is 'denied or impaired' only if the defendant does not receive that which state law provides." *Ross v. Oklahoma*, 487 U.S. 81, 89, 108 S.Ct. 2273, 2279, 101 L.Ed.2d 80 (1988).[17] Missouri law provides that criminal defendants are entitled to a "full panel of qualified jurors before being required to make peremptory challenges" and that failure to sustain a meritorious challenge for cause is prejudicial error. *State v. Wacaser*, 794 S.W.2d 190, 193 (Mo. 1990) (en banc).

■ Sloan argues that the three jurors were not qualified under Missouri law and that he therefore did not receive what state law provides. After his counsel moved to strike four panel members for cause, including the three at issue here, the prosecutor argued that these three had been rehabilitated on cross-examination and had stated they could consider both the death penalty and life without parole. The trial judge overruled the motion as to the three at issue here, but struck the fourth. Under 28 U.S.C. § 2254(d), a state court's factual findings are presumptively correct on federal habeas review. This presumption applies to decisions regarding the bias of individual jurors. *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984). "Thus, the question is whether there is fair support in the record for the state court's conclusion that the jurors here would be impartial. See 28 U.S.C. § 2254(d)(8)." *Id.* This standard requires "manifest error" by the trial court. *Id.* at 1031, 104 S.Ct. at 2888–89. The Missouri Supreme Court, *Sloan I*, 756 S.W.2d at 507–08, concluded that the evidence supports the trial court's finding of impartiality under that standard.

■ We agree that the record is sufficient to support the trial judge's conclusion that the challenged jurors could be impartial. They were qualified under Missouri law. Because Sloan had a panel of qualified jurors on which to use his peremptory challenges, he received all that Missouri law guarantees and thus all the fourteenth amendment guarantees.

## V.

Sloan also argues that a jury instruction regarding mitigating circumstances violates his rights under the eighth and fourteenth amendments. The instruction read in pertinent part:

> If you unanimously find that one or more mitigating circumstances exist sufficient to outweigh the aggravating circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life ....[18]

A: Yes.

16. Portions of Sloan's argument may be interpreted to be based on the sixth amendment right to an impartial jury, a contention he made in the district court. Any sixth amendment claim of juror bias must focus exclusively on the jurors who actually sat, however. *Ross v. Oklahoma*, 487 U.S. 81, 86, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988). The loss of a peremptory challenge alone is not a sixth amendment violation. *Id.* at 88, 108 S.Ct. at 2278; *Reynolds v. Caspari*, 974 F.2d 946, 947 (8th Cir.1992) (per curiam). Sloan does not claim that any of the jurors who actually sat were biased. He is therefore not entitled to habeas relief based on the sixth amendment.

17. The defendant in *Ross* was required under Oklahoma law to use a peremptory challenge to preserve the issue of refusal to exclude for cause. The fact that the defendant had to use a challenge was constitutionally irrelevant because that is precisely what was envisioned by state law. 487 U.S. at 89–90, 108 S.Ct. at 2278–79.

18. The jury was also instructed that:
> You are not compelled to fix death as the punishment even if you do not find the existence of one or more mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances which you find to exist. You must consider all the circumstances in deciding whether to assess and declare the punishment at death. Whether that is to be your final decision rests with you.

Sloan claims that this instruction violated his constitutional rights by requiring the jury to agree unanimously on each mitigating circumstance. *See Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

 Unless Sloan can demonstrate both cause and prejudice, this claim is procedurally barred because it was never presented to the state courts. *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977). Sloan argues that his appellate attorney, who was also trial counsel, was ineffective in not presenting this claim on direct appeal, and that this constitutes cause for the default. Failure to raise a *Mills* claim based on this instruction was not unreasonable at the time of the appeal, however. *Grubbs v. Delo,* 948 F.2d 1459, 1470–71 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992). Furthermore, Sloan cannot demonstrate prejudice because we have since held repeatedly that the instruction does not violate the eighth and fourteenth amendments. *See, e.g., Griffin v. Delo,* 33 F.3d 895, 905–06 (8th Cir.1994). This claim is procedurally barred.

## VI.

Sloan argues that a number of comments made by the prosecutor during his penalty phase closing argument were improper or inflammatory, and therefore violated his eighth and fourteenth amendment rights. For example, the prosecutor compared the value of Sloan's blood to that of veterans who had died defending their country and argued that he must die to deter other potential criminals. He also said that he was reminded of Sloan when "some crazy Arab . . . said he was going to kill Americans in the streets of America" and that other prisoners would believe Sloan was a "hero" if he were sentenced to life instead of being executed.

Sloan is barred from raising these constitutional claims on habeas because he did not raise them in the state courts. On direct appeal to the Missouri Supreme Court, only one portion of Sloan's brief referred to the prosecutor's closing, and that section was not based on federal law. Sloan argued:

> The trial court should have declared a mistrial *sua sponte* when the prosecutor in

his closing argument at the punishment stage asked the jury to decide whether or not the Appellant's "blood is more valuable than people who honorably give their lives so that we can be free from fear" (Tr. 1167) which was objected to by counsel for Appellant, but sustained. The language was clearly inflammatory. Similarly, the prosecutor argued, "We are a nation of laws and we don't change the law for just particular circumstances. If the law is to be enforced, especially in these types of cases where someone brutalizes a baby, we must. Because if we fail to do that in this case, [it] says something about us and our society" (Tr. 1175). Appellant's counsel immediately objected, arguing that the statement was an incitement to the community that if the community did not kill, they were somehow derelict in their duty toward society (Tr. 1176).

This portion of Sloan's brief was part of his argument regarding the Missouri Supreme Court's statutory duty to review whether the death penalty resulted from passion, prejudice, or some other arbitrary factor and whether the sentence was excessive or disproportionate in comparison with other cases. Mo.Rev.Stat. § 565.035 (1986); *see Sloan I,* 756 S.W.2d at 510–11.

 Before a federal court can consider a claim on federal habeas, the petitioner must have presented the same facts and legal theories to the state courts. *See Cox v. Lockhart,* 970 F.2d 448, 454 (8th Cir.1992). Sloan's argument to the state court regarding the prosecutor's closing did not include a constitutional claim, and he did not mention the eighth or fourteenth amendments in relationship to this claim on direct appeal. He cited only state cases in the relevant portion of his brief, and the Missouri Supreme Court relied entirely on state law in making its decision. *See Sloan I,* 756 S.W.2d at 509. Although the Missouri court's review for prejudice and passion is somewhat similar to the "fundamentally unfair" standard used to review allegedly improper statements under the Constitution, *see Darden v. Wainwright,* 477 U.S. 168, 178–79, 106 S.Ct. 2464, 2470–71, 91 L.Ed.2d 144 (1986), they are not the same legal theory.

■ Because Sloan did not challenge the prosecutor's statements using a federal legal theory in the state courts, we cannot consider his claims unless he can either show cause for the default and actual prejudice, or demonstrate that a fundamental miscarriage of justice will otherwise result. *Coleman,* 501 U.S. at 750–51, 111 S.Ct. at 2565. Sloan has made no attempt to prove cause and prejudice or actual innocence. His claims about the prosecutor's closing are procedurally barred.[19]

### VII.

After considering all of the claims raised by petitioner and carefully reviewing the record, we conclude that he has not shown he is entitled to habeas relief or that the district court erred in not granting him an evidentiary hearing. The judgment of the district court is therefore affirmed.

BRIGHT, Senior Circuit Judge, concurring.

I concur in the result. I agree with the majority that the record before us does not justify habeas relief.

I write separately because this case for me is a most disturbing one. A nineteen-year-old family member kills his mother, father and two brothers. The prosecution's evidence, which suggests that Jeffrey Sloan committed the murders because his father discovered that he (Jeffrey) was writing checks on the father's account, does not offer a plausible reason for these quadruple murders. Either Jeffrey is the embodiment of absolute evil, but his past record does not so indicate, or some deep-seated psychological or mental aberration was at work.

I have the distinct feeling that the full story has yet to be told; it may in fact never be told. While Jeffrey Sloan does not make a case for judicial intervention in his death sentence, I believe that the questions which seem to remain may well make out a case for a possible executive action.

Mental health professionals, other than those who testified or produced reports for the trial, should examine Jeffrey for the purpose of attempting to explain the underlying mental or psychological reasons for these killings. Upon receiving additional reports, if any should be made, the Governor of Missouri might consider such additional material on the matter of executive clemency.

---

19. Even if these claims were not barred, they would fail on the merits. Although not advisable, the prosecutor's statements did not make the entire proceeding fundamentally unfair. *Darden v. Wainwright,* 477 U.S. 168, 178–79, 106 S.Ct. 2464, 2470–71, 91 L.Ed.2d 144 (1986). Unlike in *Newlon v. Armontrout,* 885 F.2d 1328, 1336 (8th Cir.1989), *cert. denied,* 497 U.S. 1038, 110 S.Ct. 3301, 111 L.Ed.2d 810 (1990), a case cited by petitioner, Sloan's attorney objected to several of the prosecutor's statements and was sustained on two occasions; also unlike the circumstances in *Newlon,* his guilt is not in question. *Id.* at 1338. Having examined the entire record, we can disapprove some of the prosecutor's statements, but we cannot find that they resulted in a fundamentally unfair trial. Even if Sloan had argued and were able to prove cause, he would therefore be unable to demonstrate prejudice for the procedural default.