Ed **FLETCHER**, Petitioner,

v.

William **ARMONTROUT**, Respondent.

No. 89–0435–CV–W–JWO.

United States District Court,
W.D. Missouri, W.D.

March 7, 1990.

Ed Fletcher, Jefferson City, Mo., pro se.

William Webster, Atty. Gen., and Jared R. Cone, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDERS DIRECTING FURTHER PROCEEDINGS

JOHN W. OLIVER, Senior District Judge.

### I

### A.

This Court's order certifying three questions to the Supreme Court of Missouri, published as *Fletcher v. Armontrout,* 725 F.Supp. 1075, 1076 (W.D.Mo.1989), stated that the "questions certified are questions that relate directly to the construction that should be given to Missouri Rule 29.15 and to this Court's exercise of the habeas corpus jurisdiction conferred on it by 28 U.S.C. § 2254(a) which turns on the question of whether, under Missouri law, the petitioner may have an available state post-conviction corrective process or procedure within the meaning of 28 U.S.C. § 2254(b) and (c) at the time he filed his petition for federal habeas corpus that the petitioner should be required to exhaust before this Court should exercise the habeas corpus jurisdiction conferred by the Congress pursuant to 28 U.S.C. § 2254(a)." [1] The Supreme Court

---

**1.** The third question certified for decision by the Supreme Court of Missouri was stated as fol-

of Missouri entered an order which simply stated "certification declined."

The Supreme Court of Missouri's declination of this Court's certification of that question requires that this Court seek an answer to that question of Missouri law without the benefit of answers to the certified questions. Under the circumstances, it is necessary that orders be entered directing further proceedings for the reasons that will be stated.

### B.

■ The record before the Court establishes that petitioner did not file a Rule 91 petition for state habeas corpus in either the Missouri Court of Appeals, Western District, or in the Supreme Court of Missouri after his Rule 91 petitions for state habeas corpus were denied by the Circuit Court of Cole County. Consideration of comity and federalism requires that an order be entered that will require the petitioner in the first instance to prepare, serve, and file a Missouri Rule 91 petition for habeas corpus in the Missouri Court of Appeals, Western District.

If that court exercises the habeas corpus jurisdiction conferred on it by Art. 5, § 4 of the Constitution of Missouri and if that court affords the petitioner whatever hearing may be required by applicable federal law and thereafter determines the merits of the federal claims that may be alleged in the petitioner's Rule 91 petition for state habeas corpus, it will be clear that Missouri Rule 91 does indeed provide the petitioner with an available state post-conviction remedy within the meaning of 28 U.S.C. § 2254(b) and (c) at the time he filed his petition for federal habeas corpus and that must be exhausted before this Court exercises the jurisdiction conferred on it under 28 U.S.C. § 2254(a).[2]

### C.

■ The fact that the Missouri Court of Appeals, Western District, may refuse to exercise the jurisdiction conferred on it by Art. 5, § 4 of the Constitution may not be a complete answer to the exhaustion question posed in the third question stated in our earlier order certifying questions to the Supreme Court of Missouri. We recognized in footnote 17 in *Fletcher*, 725 F.Supp. at 1086, that the Eighth Circuit stated in *Romano v. Wyrick*, 681 F.2d 555, 557 (8th Cir.1982), a probation revocation case where state habeas corpus was clearly an available state court postconviction remedy, that " 'Romano should file a habeas petition either with the Court of Appeals of Missouri or the Supreme Court. (We think he should not be required to do both.) If this petition is rejected, he may then return to the federal district court and challenge his probation revocation in a new habeas petition.' "

We are satisfied, however, that consideration of comity and federalism mandates

---

lows: "Whether, in light of the Circuit Court of Cole County's summary dismissal of petitioner's two Rule 91 petitions for habeas corpus without a hearing and without a determination of the merits of the state and federal postconviction claims alleged in that petition, did the prohibition against the suspension of the privilege of the writ of habeas corpus contained in Art. 1, § 4 of the Bill of Rights of the Constitution of Missouri, provide the petitioner with an available state postconviction remedy within the meaning of 28 U.S.C. § 2254(b) and (c) at the time he filed his petition for federal habeas corpus in that he had the right at that time and he presently has the right to invoke the jurisdiction conferred on the Supreme Court of Missouri and the Missouri courts of appeal by Art. 5, § 4 of the Constitution of Missouri to issue and determine original remedial writs by filing a new Rule 91 petition for habeas corpus in

either or both of those state appellate courts?" 725 F.Supp. at 1077.

2. Appendix C of *Richardson v. Miller*, 716 F.Supp. 1246, 1273 (W.D.Mo.1989), noted that "the obvious inconvenience of an appellate court conducting an evidentiary hearing in a habeas corpus case 'in which there is a dispute as to a factual issue' may easily be avoided by the utilization of existing available Missouri procedures." The "existing available Missouri procedures" were stated by the Supreme Court of Missouri in the landmark case of *Abel v. Wyrick*, 574 S.W.2d 411 (Mo.Sup.1978) (en banc), as follows: "In a case in which factual issues are in dispute, this court may refer the matter to a circuit court for determination of fact issues *or may appoint a master who will hold a hearing on the evidentiary questions* and, in either event, the findings can then be certified to this court." *Id.* at 416. (Emphasis added.)

that a second order be entered that will require the petitioner to file a Rule 91 petition for state habeas corpus in the Supreme Court of Missouri in the event the Missouri Court of Appeals, Western District, refuses to exercise the jurisdiction conferred on it by Art. 5, § 4 of the Constitution of Missouri.

It should be added that if both the Missouri Court of Appeals, Western District, and the Supreme Court of Missouri summarily dispose of petitioner's Rule 91 petitions in a manner substantially the same as the pattern of disposition reflected in *Williams v. Kaiser,* 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398 (1945), and *Tomkins v. Missouri,* 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407 (1945), this Court may be required to reach and decide the question left open by the Court's opinion in *Case v. Nebraska,* 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). That Fourteenth Amendment question is discussed in detail in part IV of *Richardson v. Miller,* 716 F.Supp. at 1251 *et ff.,* and is incorporated herein by this reference.

## II

### A.

*White v. State,* 779 S.W.2d 571 (Mo. banc 1989), was decided after this Court entered its certification order in *Fletcher.* If this Court had had the benefit of *White* before it decided *Richardson* and *Fletcher,* it is not unlikely that both those cases would have been dismissed without prejudice on exhaustion grounds. For what was said in *White* clearly indicates that the Supreme Court of Missouri has recognized that under the Constitution of Missouri state habeas corpus is still available as a state court postconviction remedy.

### B.

The impact of *White* may be understood by a brief review of proceedings directed by Judge Bartlett in *Beverly v. Armontrout,* No. 89-0014-CV-W-9, after *White* had been handed down by the Supreme Court of Missouri. The respondents in

*Beverly* contended that the failure of the petitioner to file either a Rule 27.26 motion or a Rule 29.15 motion before the June 30, 1988 deadline constituted a complete waiver of any right to State postconviction relief. Judge Bartlett tentatively rejected that contention and entered an order in *Beverly* that required the respondents to clarify the State's position on exhaustion for the reason that "if petitioner's allegations are correct, he could not have complied with the time limits in Rule 29.15(m) because he did not know prior to June 30, 1988, the deadline in Rule 29.15(m), the factual basis for his claim." Order at 4. That order stated:

> The respondents will be ordered to specifically address the question of availability of a state postconviction remedy under these circumstances. Specifically, respondents should furnish any authority that the courts of the State of Missouri would hold under these circumstances that petitioner had waived any right to post-conviction relief by not asserting this claim prior to June 30, 1988. Furthermore, respondents should comment on the availability of habeas corpus relief under Art. I, § 12 of the Missouri Constitution ("that the privilege of the writ of habeas corpus will never be suspended").

*Id.* at 4-5.

The order entered in *Beverly* specifically focused on the Supreme Court of Missouri's decision in *White* by adding that:

> In particular, respondents shall comment on how I should consider *White v. State,* 779 S.W.2d 571 (Mo. banc 1989). In *White,* the Supreme Court of Missouri unanimously stated that: "Inasmuch as habeas corpus jurisdiction springs from the constitution, it may not be eliminated by statute or rule. *State ex rel. Whitson v. Busch,* 776 S.W.2d 374 (Mo. banc 1989) (Blackmar, C.J. concurring)." 779 S.W.2d at 573. (In *Busch,* 776 S.W.2d at 379-80, Chief Justice Blackmar said, "[t]he great writ is a part of our constitutional jurisdiction, which cannot be limited by statute or rule. Mo. Const. Art. V,

§ 4.1.")[3]

*Id.* at 5.

The response filed on behalf of the respondents in *Beverly* reflects the consistent effort of the Attorney General of Missouri to foreclose the consideration of the merits of a state prisoner's federal postconviction claims in either the courts of Missouri or in the federal courts that sit in this State.[4] That response suggested that the question of "whether the petitioner has an avenue of relief in state court under Missouri Supreme Court Rule 91" is a "difficult question" and that the respondents "are not certain how to construe *White v. State,* 779 S.W.2d 571 (Mo. banc 1989)." Resp's Response in *Beverly* at 1. Although the Attorney General directed specific attention to *White*'s unequivocal statement at page 572 of that opinion which stated that a "confined person may always petition for habeas corpus," the Attorney General was willing only to concede that "*White appears to suggest* that state *habeas* is available." (Emphasis added.)

It is indeed difficult to understand why the Attorney General states in respondents' response in *Beverly* that *White* only "appears to suggest" that state *habeas* is an available state court postconviction rem-

edy. For the *White* court expressly concluded that "[i]nasmuch as habeas corpus jurisdiction springs from the constitution, it may not be eliminated by statute or rule. *State ex rel. Whitson v. Busch,* 776 S.W.2d 374 (Mo. banc 1989) (Blackmar, C.J. concurring)." 779 S.W.2d at 573.[5]

### C.

■ As a last resort to avoid the impact of *White*'s conclusion that the habeas corpus jurisdiction conferred on the trial and appellate courts of Missouri by the Constitution of Missouri "may not be eliminated by statute or rule" (779 S.W.2d at 573) the Attorney General stated in his *Beverly* response that the "respondents submit that most of the *White* opinion is *dicta*" and argues that "[u]ntil the Supreme Court of Missouri expressly holds that prisoners who have failed to seek post-conviction relief via Rules 24.035 or 29.15 may have 'another bite of the apple' under Rule 91, the respondents believe that no such remedy is available." *Beverly* Resp. at 2.

Although *White* made clear that it did not need to reach the State and federal constitutional questions apparently briefed in that case,[6] it is not unreasonable to

3. The formal order entered in *Beverly* stated that "it is hereby ORDERED that within 20 days from the date of this order, respondents shall address the questions raised above so that a proper determination can be made of whether petitioner has exhausted available state remedies as required by 18 U.S.C. § 2254(b). Petitioner may reply within 20 days after respondents' response to this order is served on him." *Id.*

4. Footnote 7 of Appendix C in *Richardson* states in part that: "It has long been an unfathomable mystery to this Court why the Attorney Generals of Missouri, past and present, have apparently believed that the presentation of arguments to bar the consideration of the merits of federal postconviction claims in both the courts of Missouri and in the federal courts conserves either the time of the Attorney General's office or the judicial time of either the state or federal courts." 716 F.Supp. at 1273. Chief Justice Blackmar wrote his dissenting opinion in *State v. Wheat,* 775 S.W.2d 155, 159 (Mo. banc 1989), "at some length" because he was "not sure that prosecutors, trial judges and some appellate judges fully understand the problem presented by constitutional claims which are not disposed of on the merits." That dissent accurately stat-

ed that the "best answer to a belated claim of constitutional infirmity is to show that there has been a full and fair determination of the merits in the state system" (*id.*) for the reason that if "the state courts do not provide a forum for the determination of postconviction claims, the federal courts will, in proceedings under 28 U.S.C. Sec. 2254." *Id.* at 160. Consistent with the applicable principles of federalism, Chief Justice Blackmar added that "[t]he basic responsibility is that of the state. I do not want the courts of another sovereignty to make factual or procedural determinations which should be the responsibility of our courts." *Id.*

5. *White* obviously accepted and adopted the view stated in Chief Justice Blackmar's concurring opinion in *Busch.* That concurring opinion made clear that the "great writ is a part of our constitutional jurisdiction, *which cannot be limited by statute or rule.*" 776 S.W.2d at 379–80. (Emphasis added.)

6. The last paragraph of *White* stated that: "Because our opinion does not preclude possible resort to other remedies, we do not have to consider the equal protection (Mo. Const. art. I, § 2; U.S. Const. amend. XIV); open courts (Mo.

# 1352

assume that the Supreme Court of Missouri may have concluded that what was said in *White* was a sufficient answer to the constitutional arguments presented by the parties in that case. For the short order declining certification in this case was entered by the Supreme Court of Missouri the same day, December 12, 1989, that rehearing was denied in *White*.

The Attorney General's contention that "most of the *White* opinion is *dicta*" is in any event obviously untenable. For a federal court is frequently required to determine questions of state law without benefit of a direct holding of the highest court of a particular state. The leading Eighth Circuit case of *Yoder v. Nu–Enamel Corporation*, 117 F.2d 488, 489 (8th Cir.1941), recognized almost fifty years ago that both before and particularly after *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must look to all persuasive data, including dicta, in cases in which it does not have the benefit of a direct holding of the highest court of a state. *See Hawks v. Hamill*, 288 U.S. 52, 58, 60, 53 S.Ct. 240, 242, 243, 77 L.Ed. 610 (1932) (cited in *Yoder*) in which Justice Cardozo pointed out in a pre-*Erie* case that "the radiating potencies of a decision may go beyond the actual holding" and that although an "opinion may be so framed that there is doubt whether the part of it invoked as an authority is to be ranked as a definitive holding or merely a considered dictum ... little gain is to be derived from drawing nice distinctions between dicta and decisions."

We thus entertain no doubt that even if *White*'s statement that "habeas corpus jurisdiction springs from the constitution [and] may not be eliminated by statute or rule" may be considered as dicta, such considered dicta must be recognized by this Court as a binding construction of the Constitution of Missouri.[7]

### D.

The federal courts that sit in this state, together with the Missouri courts of appeal and the circuit courts of Missouri, are all bound by the decisions of the Supreme Court of Missouri that construe the Constitution of Missouri. It is judicially inconceivable that the Missouri Court of Appeals, Western District, for example, could properly conclude in the face of *White* that the habeas corpus jurisdiction conferred on that court does *not* "spring from the constitution" and that such jurisdiction *"may* [rather than may *not*] be eliminated by statute or rule."

It is thus clear that if the Missouri Court of Appeals, Western District, in accordance with *White*, exercises the habeas corpus jurisdiction conferred on it by the Constitution of Missouri and conducts an appropriate evidentiary hearing, either directly or by appointment of a special master, and decides the merits of the petitioner's postconviction claims, the only questions that would thereafter be open for federal habeas consideration in the event state habeas corpus relief should be denied would be whether the petitioner had been afforded a full and fair hearing of the merits of his federal claim in the state court, whether the facts were reliably found, and whether the applicable federal constitutional standards were properly applied under the established factual circumstances.

28 U.S.C. § 2254(d), which codified long existing law, expressly provides that in

---

Const. art. I, § 14), and due process (Mo. Const. art. I, § 10; U.S. Const. amend. V; amend. XIV) arguments." 779 S.W.2d at 573.

**7.** On January 17, 1990, in the post-*White* case of *Hampton v. Miller*, No. 88–1133–CV–W–3–P, Senior Judge Elmo B. Hunter dismissed a state prisoner habeas case without prejudice on exhaustion grounds for the reason that " 'it would appear that habeas corpus is an available remedy that must be exhausted before seeking relief in federal court.' " *Id.* at 2. On February 26, 1990, Judge Howard F. Sachs did the same thing in *Evans v. Kemna*, No. 89–0564–CV–W–6–P. Judge Sachs cited *White* and appropriately stated that "[i]n that case Chief Justice Blackmar wrote that 'a confined person may always petition for habeas corpus' in the State Court." *Id.* at 4. It is thus clear that other judges of this Court have read *White* as we read that case for the reason that "little gain is to be derived from drawing nice distinctions between dicta and decisions" in accordance with Justice Cardozo's observation in *Hawks v. Hamill*.

"any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, . . . ." subject to the eight exceptions set forth in that section of the Code.[8]

Experience establishes that it is indeed a rare case in which a state prisoner has been granted federal habeas corpus relief after the merits of his federal postconviction claims have been determined by a state court after a full and fair hearing has been accorded the petitioner in state court in accordance with applicable law. The orders that will be entered in this case will afford the appellate courts of Missouri the opportunity to discharge the "basic responsibility [of the courts of Missouri to] provide a forum for the determination of postconviction claims." *State v. Wheat*, 775 S.W.2d at 160 (Blackmar, C.J. dissenting).

## III

It is not necessary that we discuss in any detail a number of other points relied upon by the Attorney General in the response filed in *Beverly* in support of the respondents' prayer that the petition for federal habeas corpus should be dismissed without further federal court proceedings. All those reiterated arguments have been considered and rejected by this Court in either *Richardson* or *Fletcher*.

### A.

The Attorney General's attempted reliance on *Day v. State*, 770 S.W.2d 692 (Mo. banc 1989), is untenable for the reasons stated in detail in *Fletcher*, 725 F.Supp. at 1082 and at 1087–89.[9] We incorporate what was there said in *Fletcher* by this reference.

### B.

The Attorney General contends that recognition of *White* 's statement that state habeas corpus is available as a matter of Missouri constitutional law "would undermine the court's apparent purposes both in enacting Rule 27.26 and in replacing it with Rules 24.035 and 29.15," citing J. Morris, *Postconviction Practice Under the "New 27.26,"* 43 Mo. Bar J. 435, 436–437 (October–November 1987). So far as this Court knows, the Supreme Court of Missouri has never stated the reasons why it decided to repeal Rule 27.26 and to replace that rule with new Rules 24.035 and 29.15.[10]

---

**8.** A federal habeas corpus court must apply the presumption established by Section 2254(d) unless "the applicant shall establish or it shall otherwise appear, or the respondent shall admit —(1) that the merits of the factual dispute were not resolved in the State court hearing; (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing; (3) that the material facts were not adequately developed at the State court hearing; (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding; (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding; (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or (7) that the applicant was otherwise denied due process of law in the State court proceeding; (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record."

**9.** We pointed out in *Fletcher* that the Attorney General has stated inconsistent positions in regard to *Day* in this case and in *Evans v. Kemna*, No. 89–0564–CV–W–6–P, which pended before Judge Sachs. In the latter case the Attorney General conceded that the " 'Missouri Supreme Court has not addressed the issue of the availability of state habeas relief since Rule 29.15 was enacted.' " *See* 725 F.Supp. at 1082. That concession was, of course, made after *Day* had been decided.

**10.** Chief Justice Blackmar's dissent in *Wheat* makes clear that the construction given new Rule 29.15 by the majority opinion in that case was inconsistent with his understanding of the

In *Richardson,* 716 F.Supp. at 1250, we pointed out that the Eighth Circuit in *Barks v. Armontrout,* 872 F.2d 237, 239 (8th Cir.1989), noted "the language of Missouri's new Rule 29.15(k) 'mirrors the language' of one of the rules proposed by Chief Justice Donnelly in his dissent in *Flowers v. State,* 618 S.W.2d 655 (Mo. banc, 1981) (en banc), 872 F.2d at 239" and that most "significantly, *Barks* added that the 'Attorney General has conceded that the *Flowers* decision was a factor in the revision of the rules.' *Id.*" While that concession of the Attorney General did not really state the reasons why Rule 27.26 was repealed, it did prompt this Court's detailed discussion of Chief Justice Donnelly's *Flowers* dissent in Appendix C of *Richardson. Id.* at 1271–78. We incorporate what was said in *Richardson*'s Appendix C by this reference.

Because *Barks* also stated that when "determining the meaning of state law, federal courts owe respect to the authoritative interpretation of the state's attorney general," we also discussed the Morris article cited by the Attorney General in his *Beverly* response in Appendix B of *Richardson,* 716 F.Supp. at 1263 to 1271. For reasons that were stated in detail, we concluded that the "view expressed by the Chief Counsel of the Criminal Division of the Missouri Attorney General's Office in regard to the Court's 'repudiation' of *Fay v. Noia* [372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)] is an untenable view." [11] *Id* at 1271. We incorporate by

this reference what was said in *Richardson*'s Appendix B by this reference.

### C.

Finally, and for reasons that are indeed difficult to understand, the Attorney General contended in his *Beverly* response that recognition of *White*'s determination that state habeas corpus is a constitutionally available state court postconviction remedy would be "inconsistent with the court's recent reaffirmation of *Wiglesworth v. Wyrick,* 531 S.W.2d 713 (Mo. banc 1976), in *Day v. State.*" Resp's Response in *Beverly* at 2. *Day,* of course, did not in any way "reaffirm" *Wiglesworth.* For the constitutional questions presented in *Wiglesworth* simply were not before and were not considered by the *Day* court.

In *Fletcher* we stated that it was "not necessary that we repeat in any detail what we said about *Wiglesworth* in Appendix D entitled Juridical History of the Supreme Court of Missouri's Construction and Application of Rule 27.26 in *Richardson v. Miller,* 716 F.Supp. at 1278–1283" and added that we "incorporate what we there said about *Wiglesworth* by this reference." 725 F.Supp. at 1083. We make the same incorporation by reference in this case.

It should be added that the Attorney General's *Wiglesworth* argument was expressly rejected by the Supreme Court of Missouri in *White. White* noted that the "state argues that Rule 24.035 subsumes habeas corpus, citing *Wiglesworth v. Wy-*

---

purpose of that new rule. He stated that "Rule 29.15, and its companion, Rule 24.035, serve the salutary purpose of encouraging convicted defendants to present their post-conviction claims in a timely manner." 775 S.W.2d at 159. He added, however, that "I cannot find a word, phrase or line in Rule 29.15 which says that it was intended to limit the scope of the points which could be presented on direct appeal" and that "I certainly did not perceive any such restriction when I voted in favor of the adoption of that rule." *Id.* Because he believed that the new rules were being construed in a manner that precluded "a full and fair determination of the merits [of a state prisoner's postconviction claims] in the state system," Chief Justice Blackmar stated that "[t]here should be careful study of these rules in operation to see whether some amendment may be necessary." *Id.* at 160.

**11.** In part VII of *Richardson*'s Appendix B we concluded that: "The bottom line of an accurate analysis of *Sykes* and the progeny of that case requires the appropriate recognition that the line of Supreme Court of the United States cases construing 28 U.S.C. § 2254(a) did not in any way purport to overrule, or to 'repudiate' the basic principles and standards articulated in *Townsend v. Sain* and *Fay v. Noia.* A failure to recognize the fundamental principles established by the Supreme Court of the United States in those cases could lead to unanticipated problems that would tend to disrupt the orderly administration of criminal justice in both the State and federal courts." *Id.*

*rick,* 531 S.W.2d 713 (Mo. banc 1976)." 779 S.W.2d at 572. Although *White* stated that the precise question was not before that court, the opinion stated that it "is not inappropriate to point out, however, that there were no time limitations on former Rule 27.26" and that because both new Rules 24.035 and 29.15 do carry time limitations, "*Wiglesworth* is not squarely in point." *Id.* at 572–73.

A draft of this memorandum and orders directing further proceedings has been circulated to the other members of our Court in the same manner and for the same reason that drafts of *Richardson* and *Fletcher* were circulated. *See* 716 F.Supp. at 1259 and 725 F.Supp. at 1078 n. 2.

## IV

For the reasons stated, and acting pursuant to the mandate of 28 U.S.C. § 2243 that this Court should dispose of a habeas corpus case "as law and justice require," it is

ORDERED (1) that this Court retain jurisdiction of this state prisoner federal habeas corpus proceeding but that it not proceed with further processing of the case or reach the merits of the pending petition for federal habeas corpus until the Missouri Court of Appeals, Western District, and thereafter the Supreme Court of Missouri are afforded the opportunity to exercise the habeas corpus jurisdiction conferred on each of those courts by Art. 5, § 4 of the Constitution of Missouri and the mandate of Art. 1, § 12 of the Constitution of Missouri which provides that "the privilege of habeas corpus shall never be suspended." It is therefore further

ORDERED (2) that if the petitioner wishes to have this Court exercise the habeas corpus jurisdiction conferred on it by 28 U.S.C. § 2254(a), he shall first file a Missouri Rule 91 petition for state habeas corpus relief in the Missouri Court of Appeals, Western District. It is further

ORDERED (3) that in the event the petitioner does not obtain habeas corpus relief in the Missouri Court of Appeals, Western District, pursuant to the Missouri Rule 91 petition filed in that court, petitioner shall then file a Rule 91 petition for state habeas corpus relief in the Supreme Court of Missouri. It is further

ORDERED (4) that if the petitioner does not obtain state habeas corpus relief in the Supreme Court of Missouri to which he believes he is entitled, he is hereby granted leave to file a written request that this Court enter orders consistent with the jurisdiction conferred on it by 28 U.S.C. § 2254(a) and to reinstate this case on the active docket of this Court. Petitioner shall attach copies of all proceedings conducted by the Missouri Court of Appeals, Western District, and in the Supreme Court of Missouri, as the case may be, in regard to the Missouri Rule 91 petitions for state habeas corpus relief that petitioner may hereafter file pursuant to Order (2) and Order (3) entered above.