Arthur Scott CLAY, Relator,

v.

Dave DORMIRE, Superintendent, and the Office of the Platte County Prosecuting Attorney, Respondents.

No. SC 82331.

Supreme Court of Missouri,
En Banc.

Dec. 5, 2000.

Susan L. Hogan, Appellate Defender, Kansas City, for relator.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael J. Spillane, Asst. Atty. Gen., Jefferson City, for respondents.

LIMBAUGH, Judge.

Relator, Arthur Scott Clay, was convicted of forcible rape in 1989 and sentenced to twenty years in prison. He was sentenced by the judge rather than by the jury because the judge found him to be a prior offender, based on the erroneous consideration of an expunged prior conviction. A copy of the expungement order came to light only after relator's direct appeal and post-conviction motion had

been denied. He now petitions for a writ of habeas corpus ordering a new trial and for a writ of mandamus directing that all references to the prior conviction be expunged from his records. The petition was filed originally in the Court of Appeals, Western District, and after issuance of an opinion granting both habeas corpus and mandamus relief, this Court granted respondents' application for transfer and assumed jurisdiction. Mo. Const. art. V, sec. 10. Rule 83.04. Having now determined that habeas corpus relief is unwarranted, relator is ordered remanded to the custody of the Department of Corrections. However, the petition for writ of mandamus is granted, and a peremptory writ of mandamus is ordered to issue.

On July 12, 1974, in the Circuit Court of Platte County, Missouri, relator pled guilty to the offense of distributing hashish and was placed on probation. Years later, after successfully completing probation, relator filed a motion with the sentencing judge pursuant to § 195.290, RSMo 1978 (repealed 1989), to expunge the conviction. While it was in effect, § 195.290 required trial courts to expunge the convictions of drug offenders who had been placed on probation if the offender was under twenty-one years of age at the time of the offense, had not reoffended or repeatedly violated probation, and had applied for expungement. The statute also provided that "the effect of such order shall be to restore such person, in the contemplation of the law, to the status he occupied prior to such arrest and conviction." *Id.* On July 2, 1980, following an evidentiary hearing, the sentencing judge entered an order expunging the conviction, on a finding that the requirements of § 195.290 had been satisfied.

Thereafter, on May 9, 1989, relator was convicted by a Platte County jury of the offense of forcible rape. During the trial, the judge found that relator was a prior offender based on the prosecutor's introduction of a copy of relator's 1974 drug conviction, which, inexplicably, had never been expunged from the records of the circuit clerk's office. Because of relator's status as a prior offender, the judge, rather than the jury, imposed sentence as provided under § 557.036.2, RSMo 1986. Although the 20 year sentence was within the statutory range of punishment of five years to life, the trial court apparently considered the prior expunged conviction, as well as relator's successful completion of probation for that offense, in imposing the sentence.

The existence of the expungement order was not raised by relator at trial or in his direct appeal or in his subsequent post-conviction motion. The Court of Appeals affirmed the conviction and denial of post-conviction relief, except as to a minor clerical error, on June 18, 1991. *State v. Clay*, 812 S.W.2d 872, 873 (Mo.App.1991). In 1992, relator contacted the circuit clerk's office requesting the "judgments and orders of my convictions for prior felonies," and he was advised that there was no record of any felony convictions under his name except the recent rape conviction. Thus, by that time, the prior conviction that the clerk had certified for the prosecutor's use during the rape trial had apparently finally been expunged from relator's file. The record does not reveal when or how this occurred or how the expungement order came to the clerk's attention at that late date. Although the 1974 conviction had been expunged from the clerk's records, no copy of the expungement order was forwarded to the Department of Corrections, and the briefing on this appeal makes clear that the Department's records still reflect relator's expunged conviction.

Once relator was made aware that his prior conviction should not have been used to deny him jury sentencing, he filed for habeas corpus relief in Platte County, but his petition was denied for improper venue under Rule 91.02. Relator then applied for habeas corpus relief, under 28 U.S.C. § 2254 (1994), in the United States District Court for the Western District of Missouri.

The District Court denied that request on August 29, 1995, and the decision was affirmed by the United States Court of Appeals for the Eighth Circuit, for the reason that relator was first required to request such relief in the state courts. *Clay v. Gammon*, 89 F.3d 840 (8th Cir.1996). Finally, relator filed the petition for writs of habeas corpus and mandamus that is the subject of this opinion.

The petition is based on the newly-discovered evidence of the expungement order. Relator contends that "[a]brogating [his] statutory right to jury sentencing by the use of a conviction which had been duly expunged according to law denied [him] his rights to a fair trial and to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Missouri Constitution." He also contends that he was "harmed ... because the trial court considered the prior conviction in assessing [his] punishment ... [and] determined [his] sentence on the basis of information that was not properly before the court."

■■■ The relief available under a writ of habeas corpus has traditionally been very limited, and courts are not required to issue this extraordinary writ where other remedies are adequate and available. *State ex rel. Simmons v. White*, 866 S.W.2d 443, 445–46 (Mo. banc 1993). Out of concern over "duplicative and unending challenges to the finality of a judgment," a person cannot usually utilize a writ of habeas corpus to raise procedurally-barred claims—those that could have been raised, but were not raised, on direct appeal or in a post-conviction proceeding. *Id.* at 446. Very limited exceptions to this rule are recognized where the person seeks to use the writ "to raise jurisdictional issues or in circumstances so rare and exceptional that a manifest injustice results" if habeas corpus relief is not granted. *Id.* Here, relator makes no claim of jurisdictional error, but

complains only that manifest injustice has occurred.

■■■ Although *Simmons* did not define the term "manifest injustice" for habeas cases, it is essentially the same, as the Eighth Circuit observed in *Duvall v. Purkett*, 15 F.3d 745, 747 and n. 3 (8th Cir. 1994), *cert. denied*, 512 U.S. 1241, 114 S.Ct. 2753, 129 L.Ed.2d 870, as the term "miscarriage of justice" or "fundamental miscarriage of justice" used in federal habeas cases. Following the lead of the United States Supreme Court's habeas corpus cases, and most recently *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), this Court holds that the manifest injustice or miscarriage of justice standard requires the habeas corpus petitioner "to show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent,' " *id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)), and further, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light [of new evidence of innocence]," *id.* As explained in *Schlup* and earlier cases, the actual innocence component of the miscarriage of justice standard is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits, [and] ... [w]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice...." *Id.* at 315–16, 115 S.Ct. 851 (quoting *Herrera v. Collins*, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)).

Ultimately, the Supreme Court has concluded that "explicitly tying the miscarriage of justice exception to innocence thus accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.' " *Id.* at 322, 115 S.Ct.

851 (citing *Murray v. Carrier*, 477 U.S. at 496, 106 S.Ct. 2639). These interests, excluding comity, of course, justify the same approach in Missouri. Indeed, the actual innocence component is all the more appropriate for Missouri cases given the fact that defendants are already afforded an initial habeas-like post-conviction relief proceeding under Rule 29.15 or Rule 24.035 in which constitutional claims (usually involving ineffective assistance of trial counsel) like those that so often appear in habeas corpus petitions may be presented.

▆▆▆ With the exception of the penalty phase in capital cases,[1] manifest injustice under the "actual innocence" standard applies only to the issue of guilt or innocence and is of no avail to claims of error committed during the sentencing process. *See Sawyer v. Whitley*, 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Errors during sentencing in non-capital cases are only actionable in habeas corpus if it is shown that the court had no jurisdiction to impose the sentence in question, as in the case where a court imposes a sentence that is in excess of that authorized by law, *State ex rel. Osowski v. Purkett*, 908 S.W.2d 690, 691 (Mo. banc 1995), or where the sentencing court utilized a repealed and inapplicable statute. *State v. Edwards*, 983 S.W.2d 520, 522 (Mo. banc 1999). In the case at hand, relator makes no claim that the sentence imposed exceeded that authorized by law or that the sentencing judge had no jurisdiction otherwise. Instead, relator's claims—that he was denied jury sentencing and that the judge improperly considered the prior conviction in imposing sentence—are mere trial court errors that have nothing to do with his actual innocence. The failure to raise these claims on direct appeal or in a post-conviction relief proceeding is a procedural bar that cannot be overcome through habeas corpus.

▆▆▆ Relator's petition for writ of mandamus is quite another matter. It is well-settled that "[t]he purpose of the writ is to execute, not adjudicate," and to be entitled to a writ, the relator must have "a clear, unequivocal, specific right to have an act performed." *State ex rel. Missouri Growth Ass'n v. State Tax Com'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). In this case, relator has a clear, unequivocal, specific, and previously-adjudicated right to have his prior conviction expunged from the records of the Department of Corrections. The order of July 2, 1980, which is mandated by and fully complies with the expungement statute, § 195.290, RSMo 1978, states that "... IT IS ORDERED, ADJUDGED AND DECREED that all official records, recording [relator's] arrest, trial and conviction be expunged and that the said movant be restored, in the contemplation of the law, to the status he occupied prior to the written arrest and conviction...." The state's position is that issuance of the writ is pointless because the existence of the prior conviction has been widely publicized throughout the extended litigation of this case, and the injury to relator is *"de minimus ."* This argument borders on the frivolous. Under the sentencing court's order and under the statute, relator is entitled to have the record of conviction expunged regardless of the practical effect of the expungement.

---

1. In the penalty phase of capital cases, a claim of manifest injustice based on actual innocence may be raised to challenge the evidence of aggravating circumstances that made defendant eligible for the death penalty. *Sawyer v. Whitley*, 505 U.S. 333, 345–47, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). A defendant may be " 'innocent of the death penalty' by allowing a showing in addition to innocence of the capital crime itself that there was no aggravating circumstance or that some other condition of eligibility had not been met." *Id.* Even though the Court extended the notion of actual innocence to aggravating circumstances in death cases, it made clear that actual innocence analysis does not apply to other sentencing errors, such as "additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error." *Id.* at 347, 112 S.Ct. 2514.

Because habeas corpus relief is unwarranted, relator is ordered remanded to the custody of the Department of Corrections. However, the petition for writ of mandamus is granted, and the writ is ordered to issue.

PRICE, C.J., COVINGTON, HOLSTEIN and BENTON, JJ., concur.

WHITE, J., dissents in separate opinion filed.

WOLFF, J., concurs in opinion of WHITE, J.

WHITE, Judge, dissenting.

## I.

I respectfully dissent. Rule 91 provides that habeas corpus relief is available to any person restrained of his liberty within this state.[1] The majority concludes that since Mr. Clay failed to raise the expungement issue in his direct appeal or his subsequent post-conviction relief motion filed under Rule 29.15 that his petition is procedurally barred.[2] However, this Court has held that "[i]nasmuch as habeas corpus jurisdiction springs from the constitution, it may not be eliminated by statute or rule." [3] Procedural default in remedies previously available *may* provide the basis for denying a petition in habeas corpus, but this limitation may be overcome by establishing the grounds relied on were unknown during the postconviction relief proceedings.[4]

Rule 91's committee notes refer to postconviction relief motions filed under Rules 24.035 and 29.15 as being the exclusive remedy in the situations identified by those respective rules.[5] However, subsection (d) of both rules require that the movant "shall declare in the motion that the movant has listed all claims for relief *known* to the movant and acknowledging his understanding that he waives any ground for relief *known* to the movant that is not listed in the motion." (emphasis added)

It's clear from the record that by the time of the second trial, Mr. Clay's prior conviction had not been expunged as required by statute. The Court notes that "[a] copy of the expungement order came to light only after relator's direct appeal and postconviction relief motion had been denied." The principal opinion also acknowledges that as late as 1992, one year after the denial of Mr. Clay's postconviction relief motion, the circuit court clerk was still incorrectly advising Mr. Clay that his prior conviction had been expunged. Based upon the circuit court's error, the trial judge inappropriately considered the prior conviction and inappropriately applied section 557.036.2(2), denying Mr. Clay's right to a jury sentencing.

Mr. Clay's lack of knowledge of this claim until after all procedural remedies were time-barred was the precise reason the court of appeals granted Mr. Clay's habeas writ. Curiously, the majority does not address this issue at all, and the only way it can so hold is to impute knowledge of the trial court's error to Mr. Clay.

Analyzing the rules and prior case law, the court of appeals correctly determined when lack of knowledge of a postconviction claim rises to the level of manifest injustice

1. Rule 91.01(b). See also section 532.010 (RSMo.1994).

2. *Simmons v. White*, 866 S.W.2d 443, 445–46 (Mo. banc 1993).

3. *White v. State*, 779 S.W.2d 571, 573 (Mo. banc 1989). See also Art. 1, section 12 of the Missouri constitution which states "that the privilege of the writ of habeas corpus will never be suspended," and Art. V, section 4.

4. *Id.* at 572. See also *State ex rel. Simmons v. White*, 866 S.W.2d 443, 446 (Mo. banc 1993).

5. Rule 24.035 allows a person, after conviction based upon a guilty plea, to challenge the conviction on the basis of jurisdictional error, ineffective assistance of counsel, and constitutional and statutory violations. Rule 29.15 allows the same claims to be filed in instances of a trial court conviction.

in order to grant habeas relief. In *Merriweather v. Grandison,*[6] the court stated:

> The determination of "manifest injustice," of course, calls for a broader inquiry, into which would figure the prisoner's own want of diligence, or his deliberate by-passing of an available remedy as a matter of strategy, which might constitute waiver of his habeas corpus remedy.[7]

Applying this standard, the court of appeals determined that Mr. Clay's claim had not lingered due to lack of diligence, nor was it a deliberate trial strategy justifying waiver of his habeas remedy. The court appropriately granted him habeas relief.

*Merriweather* was not the first case where Missouri courts addressed lack of knowledge to bring forth a claim on direct appeal or by postconviction relief motion. As previously noted, this Court articulated that lack of knowledge could justify habeas relief in *White v. State*[8] and *Simmons v. White.*[9] Following this Court's dictate, Missouri's court of appeals has granted habeas relief in these very situations.[10] Mr. Clay's situation is no different. He was unaware that his prior record had not been expunged until after the time-bar for postconviction relief had passed. The majority must have conceded this point otherwise they could have dispensed with Mr. Clay's claim with a simple application of Rule 29.15(d) as opposed to redefining the manifest injustice standard.

Since the entire issue discussed by the court of appeals has not been addressed, it is not clear how today's ruling will affect the decisions in *White, Simmons, Merriweather,* and *Brown.* Will those rulings, or their pertinent portions holding lack of knowledge cannot procedurally bar a claim for habeas, be overruled?

While not binding on this Court, the federal courts have had the opportunity to interpret this area of Missouri law. Relying on the language in *State v. White* and this Court's rules, the federal courts have determined that Rules 24.035 and 29.15 do not operate as a suspension of the writ of habeas corpus. Rule 91 remains available to persons confined in Missouri after the time for filing for relief under the other rules has passed.[11] "[A]n issue not known or reasonably discoverable to the petitioner in the period during which he could file for relief under Rule 24.035 or 29.15 can provide the basis for relief under Rule 91." [12]

## II.

The majority states the only options available to utilize a writ of habeas corpus would be to raise jurisdictional issues or in circumstances so rare and exceptional that manifest injustice resulted.[13] The Court then adopts the "actual innocence" standard articulated by the United States Supreme Court to narrowly define what constitutes manifest injustice.[14] Under this standard, a habeas petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is

6.  904 S.W.2d 485, 489 (Mo.App.1995).

7.  *Merriweather v. Grandison,* 904 S.W.2d 485, 489 (Mo.App.1995).

8.  *White v. State,* 779 S.W.2d 571, 573 (Mo. banc 1989).

9.  *State ex rel. Simmons v. White,* 866 S.W.2d 443, 445–46 (Mo. banc 1993).

10.  *Brown v. Gammon,* 947 S.W.2d 437, 440 (Mo.App.1997).

11.  *Walls v. Delo,* 755 F.Supp. 873, 875 (E.D.Mo.1991); *Fletcher v. Armontrout,* 733 F.Supp. 1348 (W.D.Mo.1990); and *Beverly v. Armontrout,* No. 89–0014–CV–W–9, 1990 WL 126995 (W.D.Mo. July 27, 1990).

12.  *Id.*

13.  *State ex rel. Simmons v. White,* 866 S.W.2d 443, 445–46 (Mo. banc 1993).

14.  See *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639 (1986) and *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).

actually innocent." [15] Additionally, "without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice." [16] It appears this Court no longer follows prior case law defining "manifest injustice" or the current application of Rules 24.035(d) and 29.25(d).

Immediately fatal to the majority's utilization of the actual innocence standard with regard to Mr. Clay's petition is their own observation that it is inapplicable in his situation. Specifically the opinion notes that "[w]ith the exception of the penalty phase in capital cases, manifest injustice under the 'actual innocence' standard applies *only* to the issue of guilt or innocence and is of no avail to claims of error committed during the sentencing process." [17] The Court then identifies the standard for habeas relief during the sentencing process but refuses to apply it.

As the principal opinion explains, errors in sentencing in non-capital cases are subject to habeas relief where a court imposes a sentence in excess of that authorized by law [18] and where a sentencing court based its decision on a repealed and inapplicable statute.[19] Instead of applying the appropriate standard identified, the majority attempts to use some magic thread to weave together these two habeas standards, the actual innocence standard for challenging convictions and the "sentencing in excess of jurisdiction" standard employed for errors in sentencing. Wearing its newly spun cloak of standards on top of the law, the Court dismisses Mr. Clay's claim by stating he raised no jurisdictional issue and the "mere trial court error" of improperly considering the prior conviction does not concern his actual innocence. The majority simply cannot combine its discarded actual innocence standard with the jurisdictional sentencing issue.

The principal opinion tries to further mask the issue of jurisdiction by stating the trial judge did not exceed his jurisdiction by levying a sentence within the statutory range and that, in any event, jurisdiction was not raised. This Court can, as can any other, raise jurisdiction sua sponte, and jurisdictional defects cannot be waived.[20] Clearly, the trial judge exceeded his jurisdiction. "A sentence fixed by the court instead of by the jury when the Habitual Criminal Act is not applicable is void." [21] Although the punishment assessed fell within the sentencing guidelines the jury could have fixed, the defendant was still prejudiced because the jury might have imposed a lesser punishment.[22]

The trial judge ignored statutory and precedential authority by denying Mr. Clay's right to a jury trial and pronouncing

15. *Id.*

16. *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

17. *Sawyer v. Whitley,* 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

18. *State ex rel. Osowski v. Purkett,* 908 S.W.2d 690, 691 (Mo. banc 1995).

19. *State v. Edwards,* 983 S.W.2d 520, 522 (Mo. banc 1999).

20. *Merriweather v. Grandison,* 904 S.W.2d 485, 489 (Mo.App.1995), citing to *State v. Mitchell,* 563 S.W.2d 18, 23 (Mo. banc 1978). Subject matter jurisdiction concerns the cause of action and the relief sought, and exists *only* when the tribunal has the right to determine the controversy or grant the relief prayed. *State Tax Commission v. Administrative Hearing Commission,* 641 S.W.2d 69, 72 (Mo. banc 1982), and Rule 55.27(g)(3). The right to pronounce sentencing in a criminal trial falls under subject matter jurisdiction and may be raised sua sponte at any stage in the proceedings.

21. *State v. Bryant,* 375 S.W.2d 107, 110(5) (Mo.1964). Note: The *Bryant* Court referenced section 556.280 as the Habitual Criminal Act. This act was repealed and replaced with section 588.016 in 1979. The state must plead and prove the defendant was a prior offender under section 588.016 to properly invoke section 557.036.2 and suspend a defendant's right to a jury trial.

22. *State v. Wiley,* 412 S.W.2d 485, 487 (Mo. 1967).

sentence himself. Mr. Clay's situation is analogous with the standard set in *State v. Edwards*.[23] While the trial judge in this instance did not apply a repealed statute, he did apply an inapplicable statute to seize sentencing power that he did not possess. With the judge clearly exceeding his jurisdiction in the sentencing phase of Mr. Clay's trial, habeas corpus relief is available by this Court's own standard in *Edwards*. Even if the Court rejects the previously accepted lack of knowledge claim by redefining "manifest injustice," the trial judge's actions exceeded his jurisdiction meeting the standard for habeas relief for errors in sentencing.

### III.

Finally, Mr. Clay is granted a writ of mandamus to expunge the prior conviction—an action that should have occurred some sixteen years ago. The majority finds that Mr. Clay has "a clear, unequivocal, specific, and previously-adjudicated right to have his prior conviction expunged from the records of the Department of Corrections." For some reason the majority has no trouble supporting Mr. Clay's right to this expungement under section 195.290, RSMo.1978, now repealed; but at the same time cannot find any statutory right under section 557.036.2(2), a currently effective statute, for Mr. Clay to have received a jury sentencing.

While not a constitutionally guaranteed right, Missouri preserves the right to jury sentencing under section 557.036.2(2). Only if one is a prior or persistent offender does he lose this statutory right. "Such a right to jury sentencing has been found to be such a valuable right that our courts have long held that where . . . a court has

improperly classified a defendant as a prior offender for purposes of sentencing, and the evidence is insufficient to support that finding, defendant is entitled to a new trial on all issues." [24]

Because defendant's punishment was improperly fixed, the judgment in his criminal case should be reversed and the cause remanded for a new trial. For these reasons I respectfully dissent.

**23.** 983 S.W.2d 520, 522 (Mo. banc 1999).

**24.** *State v. McFall*, 866 S.W.2d 915, 919 (Mo. App.1993). Accord, *State v. Harris*, 547 S.W.2d 473, 475–476 (Mo. banc 1977); *State v. Blackwell*, 459 S.W.2d 268, 271 (Mo. banc 1970); *State v. Vermillion*, 446 S.W.2d 788, 790 (Mo. banc 1969); *State v. Hill*, 371 S.W.2d 278, 282–283 (Mo. banc 1963); *State*

*v. Olson*, 806 S.W.2d 111, 112–113 (Mo.App. 1991); *State v. Finch*, 746 S.W.2d 607, 612 (Mo.App.1988); *State v. Meeks*, 734 S.W.2d 282, 283 (Mo.App.1987); *State v. White*, 710 S.W.2d 934, 937[4] (Mo.App.1986); *State v. Tate*, 657 S.W.2d 727, 728–729[2–6] (Mo.App. 1983); *State v. Wickizer*, 641 S.W.2d 849, 852–853[9] (Mo.App.1982).