

# SUPREME COURT OF MISSOURI
## en banc

STATE EX REL. WALTER BARTON )    *Opinion issued April 27, 2020*
                                         )
                                         )
                Relator,       )
                                         )
v.                                   )    No.  SC98343
                                         )
WILLIAM STANGE               )
                                         )
                Respondent.   )

ORIGINAL PROCEEDING IN HABEAS CORPUS

PER CURIAM

On February 18, 2020, this Court issued its order setting Walter Barton's execution date for May 19, 2020.[1] Barton seeks a writ of habeas corpus from this Court, arguing he is actually innocent. His evidence, however, does not show actual innocence but is simply additional evidence that might have been used to impeach a jailhouse informant and provide competing expert testimony to explain the presence of blood on his clothes. While this might have been helpful, it does not show actual innocence by a preponderance of the evidence as required for a gateway claim of actual innocence, nor does it rise to the level

---

[1] The factual background underlying Barton's first-degree murder conviction can be found in this Court's opinion affirming his death sentence. *State v. Barton*, 240 S.W.3d 693 (Mo. banc 2007).

of clear and convincing evidence required for a freestanding claim of actual innocence. *State ex rel. Amrine v. Roper*, 102 S.W.3d 541, 546-47 (Mo. banc 2003). Accordingly, his claims of actual innocence do not entitle him to relief.

Barton further claims he is not competent for execution because a traumatic brain injury gave him major neurocognitive disorder of sufficient severity that he meets the standard for incompetence set by the United States Supreme Court in *Panetti v. Quarterman*, 551 U.S. 930, 949 (2007). He argues his execution would violate the Eighth and Fourteenth amendments of the United States Constitution, article I, §§ 10 and 21 of the Missouri Constitution and § 552.060.[2] "A petition for a writ of habeas corpus is a proper means to raise a claim of incompetency." *State ex rel. Cole v. Griffith*, 460 S.W.3d 349, 356 (Mo. banc 2015). This Court denies the petition because Barton has not demonstrated the "substantial threshold showing of insanity" required by *Panetti* and *Ford v. Wainwright*, 477 U.S. 399, 426 (1986) (Powell, J., concurring) nor has he demonstrated he is incompetent under § 552.060.[3]

---

[2] All statutory references are to RSMo 2016, unless otherwise provided.
[3] On March 17, 2020, Barton filed a motion for stay of execution with this Court. That motion is contemporaneously overruled.

**Analysis**

**A.    *Claim of Actual Innocence*[4]**

Mr. Barton claims he presented evidence he is actually innocent of the murder for which he was convicted and sentenced to death.  He says this evidence is sufficient to show his innocence by a preponderance of the evidence, which would entitle him to have this Court consider his otherwise defaulted claim that the State failed to reveal certain exculpatory evidence.  *Clay v. Dormire*, 37 S.W.3d 214, 217 (Mo. banc 2000).  This Court disagrees.

There are two types of evidence of actual innocence on which Barton relies.  The first is testimony from a blood spatter expert who he says would have testified that the blood found on Barton's shirt and pants after the murder was not blood spatter evidence as claimed by the State's expert. But Barton made this very claim at trial, arguing the evidence on which the State's expert relied did not support his conclusions.  On appeal, this Court stated Barton's attack on the admissibility of the State's expert was frivolous.  *Barton,* 240 S.W.3d at 705.  Further, Barton's counsel considered hiring the very expert on whose testimony it now relies but decided that it would be more effective to just impeach the State's expert.  *Barton v. State,* 432 S.W.3d 741, 755 (Mo. banc 2014).

---

[4] Generally the first step in this Court's analysis of a petition for habeas corpus claiming of actual innocence – whether it be a gateway or freestanding claim – would be to consider whether the petitioner alleged new evidence to support the claim that was not available at trial, when combined with the other evidence, would meet the relevant standard for relief.  As is evident from the following discussion, Barton does not meet that threshold for habeas relief based on actual innocence.

3

Now, in support of his claim for habeas relief, Barton argues similar testimony would have made the difference in the outcome of the case, for it shows he was actually innocent. To the contrary, while this testimony might have been useful to counter the testimony of the State's expert, it does not exculpate him or inculpate another. It simply provides competing expert testimony as to the source and nature of the blood on his clothes after the murder. Even if the jury believed this evidence, it would not require the jury to find he was actually innocent. To the contrary, at the time counsel believed the testimony might be inconsistent with Barton's explanation of how the blood got on his clothes. *Id*. at 756. Further, Barton already presented similar evidence in support of his post-conviction motion alleging ineffective assistance, and this Court found counsel was not ineffective in presenting this evidence. *Id.*

Barton also states his actual innocence is shown by his discovery of additional evidence impeaching the testimony of the State's jailhouse informant, Katherine Allen, who said Barton threatened to kill her "like he did that old lady." *Barton,* 240 S.W.3d at 700; *Barton,* 432 S.W.3d at 748.

Barton suggests that, at his fourth trial, his counsel had impeached this witness with six prior convictions, but his conviction later was set aside after the postconviction court found she had 29 prior convictions and certain additional criminal charges had been dismissed in return for her testimony.

Accordingly, the evidence of the full extent of Ms. Allen's prior convictions was known to Barton's counsel before his fifth and final trial. When she again lied and said she had only six prior convictions, defense counsel chose to impeach her with 12 of her

4

prior convictions for forgery, fraud, bad checks and similar crimes going to lack of truthfulness. He did not mention the other convictions or the charges that had been dismissed, nor was this issue raised in his post-conviction motion. The issue was raised but relief was denied in his federal habeas proceedings. Now Barton argues that, because this Court has not yet had an opportunity to consider this evidence, it should now consider it and hold this evidence in combination with new evidence that she was convicted in 2016 of identity theft and mail fraud, would make the difference and would show his actual innocence.

Taking Barton's claims about Ms. Allen's convictions as true, such evidence does not support a finding of actual innocence. While counsel might have discredited Ms. Allen even more at the trial, the impeachment he did undertake demonstrated for the jury that she had been convicted of multiple crimes involving untruthfulness. That she had been untruthful on yet more occasions is still merely impeachment evidence. Unlike in *Amrine,* in which the witnesses' testimony was recanted, Ms. Allen has not recanted her testimony, and the offered evidence does not require a finding she lied at Barton's trial. It remains an issue of credibility for the jury. Further, the opinion of this Court on direct appeal delineates the substantial additional evidence supporting the conviction, including Barton's presence in the victim's trailer and answering her telephone near the time of the murder, a check the victim made out to him, his washing blood off his hands prior to the victim's body being found, his inconsistent stories, his behavior at the time of the murder, and the undisputed presence of blood on his clothes, whether from spatter or otherwise. The

5

additional impeachment evidence does not show actual innocence by a preponderance of the evidence.

Because the evidence is insufficient to make a gateway claim of actual innocence by a preponderance of the evidence, it necessarily is also insufficient to support a freestanding claim of actual innocence, which requires clear and convincing evidence of actual innocence.

## B.    *Claim of Incompetence*

"The Eighth Amendment . . . prohibits the execution of a prisoner whose mental illness prevents him from rationally understanding why the State seeks to impose that punishment."  *Madison v. Alabama*, 139 S. Ct. 718, 722 (2019) (internal quotations omitted).  The prisoner must prove he suffers from a psychotic disorder that makes him either unaware of the reasons for his punishment or such that he has no "rational understanding" of it.  *Id.* at 723 (citing *Panetti*, 551 U.S. at 957-60).  If the prisoner has a psychological dysfunction that "may have resulted in petitioner's fundamental failure to appreciate the connection between the petitioner's crime and his execution" then he may be incompetent to be executed.  *Panetti,* 551 U.S. at 960 (internal quotations omitted.)  In *Panetti*, the prisoner alleged he met this standard because he experienced "gross delusions preventing him from comprehending the meaning and purpose of the punishment to which he ha[d] been sentenced." *Id.*  Barton similarly must allege and demonstrate a "substantial threshold showing of insanity." *Id.* at 949; *Ford*, 477 U.S. at 426.

In support of his claim he is incompetent to be executed, Barton relies almost exclusively on the "Forensic Evaluation Report" authored by Dr. Patricia Zapf.  Dr. Zapf

6

was hired by Barton's counsel after November 19, 2019, when the State filed its motion to set Barton's execution date. Dr. Zapf reviewed Barton's records and conducted a two-day evaluation of him. Dr. Zapf ultimately concluded: "As a result of his Major Neurocognitive Disorder, Mr. Barton has significant impairments in executive function, problem solving, attention, concentration, working memory, and abstract reasoning, which result in the inability to provide rational assistance to counsel and to engage in consistent, logical, and rational decision making." For these reasons, Dr. Zapf opined that Barton was incompetent under the standard set forth in *Dusky v. United States*, 362 U.S. 402 (1960), and Justice Marshall's plurality opinion in *Ford,* but noted he was competent under Justice Powell's controlling concurring opinion in *Ford.* Neither *Dusky* nor Justice Marshall's plurality opinion however, provide the relevant, controlling standard by which this Court evaluates Barton's incompetency claim.[5]

Dr. Zapf's report supports a finding that Barton is competent to be executed for several reasons. First, Dr. Zapf concluded Barton had a factual understanding of why the State is imposing capital punishment:

---

[5] The issue in *Dusky* was the petitioner's competency to stand trial, not his competency to be executed. 362 U.S. at 402. The relevant standard for competency to stand trial is "whether [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against [defendant]." *Id.* While that standard is somewhat similar to the standard for competency to be executed, it is clear the standards are different and cannot be used interchangeably. The portion of Justice Marshall's plurality opinion in *Ford* regarding a prisoner's claim of incompetency to be executed garnered the votes of only three other justices. Because it was not a majority opinion, Justice Powell's concurring opinion on the same grounds is controlling because it "offered a more limited holding." *Panetti*, 551 U.S. at 949. In any event, competency is a legal determination that is made by courts, not experts. *State ex rel. Clayton v. Griffith*, 457 S.W.3d 735, 741 (Mo. banc 2015).

7

> ***Mr. Barton demonstrated a rudimentary factual understanding of the
> punishment he is about to receive and the reasons for it.*** He was able to
> describe the reason why he is in prison and elaborate on his place of residence
> within the prison. He was able to provide information about his conviction,
> a general description of the criminal act, and basic identifying information
> about the victim. Mr. Barton was unable to engage in abstract discussions
> regarding the justness of his conviction, maintaining that he was "railroaded"
> and reporting that "they're going to execute me if I can't prove my
> innocence[.]"

Emphasis added.

Second, Dr. Zapf concluded Barton had a "rational understanding"[6] of his
punishment, noting, "Mr. Barton demonstrated a simplistic, but rational understanding of
the punishment he is about to receive and the reasons for it."

Third, Dr. Zapf explicitly found Barton does not suffer from delusional thinking.
Dr. Zapf stated "***he did not demonstrate any delusional thinking*** or loss of contact with
reality and no perceptual disturbances were noted." (Emphasis added). In other words,
Barton does not suffer from "gross delusions preventing him from comprehending the
meaning and purpose of the punishment to which he has been sentenced." *Panetti*, 551
U.S. at 960.

Additionally, Dr. Zapf did not state that Barton had other psychotic disorders that
prevented him from forming both an awareness of the State's rationale for executing him
and a rational understanding of that rationale, as required by *Panetti*. The DSM-5 provides
that traumatic brain injury, like dementia and certain other diseases, can cause

---

[6] According to Dr. Zapf, "[r]ational understanding is differentiated from factual understanding in
terms of the individual's ability to apply factually understood information to the specific instance
of his own case."

8

neurocognitive disorders of a major or minor character. Dr. Zapf argues Barton is incompetent because his brain injury impaired his ability to provide rational assistance to his attorneys and to demonstrate rational decision-making in his own defense. But these conclusions are insufficient to support the determinations required by *Madison*, *Panetti*, and *Ford* unless she found his impairments resulted in an inability to have a rational understanding of the reasons for his punishment and the rationale for it. The mere fact that the prisoner does not believe he deserves the punishment is inadequate. In *Panetti*, the Supreme Court held:

> The mental state requisite for competence to suffer capital punishment ***neither presumes nor requires a person who would be considered 'normal, or even 'rational,'*** in a layperson's understanding of those terms. . . . The beginning of doubt about competence in a case like [Barton]'s is not a misanthropic personality or an amoral character. It is a psychotic disorder.

551 U.S. at 959-60 (emphasis added). While Dr. Zapf opines Barton has a neurocognitive disorder that causes him to lack the ability to provide rational assistance and to demonstrate rational decision-making due to his brain injury, she admits this does not meet the standard set out in *Ford* and she does not say Barton's cognitive dysfunction meets the standard set out in *Panetti*. His mental condition simply does not rise to the extreme level of a psychotic disorder. To the contrary, in response to Barton's petition for a writ of habeas corpus, the State provided Barton's "Complete Mental Health History" dated November 1, 2019. The history provides in pertinent part, "Offender does not appear to have any clinically significant symptoms of a mental illness at this time. Records indicate no requests for mental health services. [Barton] continues to make a good institutional adjustment."

9

Barton does not and cannot demonstrate a substantial threshold showing of insanity as required by *Panetti* and *Ford*.

In addition to his constitutional challenges, Barton also argues his brain injury leaves him incompetent to be executed under § 552.060.1,[7] which provides:

> No person condemned to death shall be executed if as a result of mental disease or defect he lacks capacity to understand the nature and purpose of the punishment about to be imposed upon him or matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out.

Barton's statutory arguments mirror his constitutional ones, and they fail for similar reasons. When addressing § 552.060.1 challenges, this Court has looked to several factors in considering the prisoner's competency. For example, in *Cole*, this Court looked to whether the prisoner can articulate and understand legal issues with his case. 460 S.W.3d at 361. Further, the Court surveyed whether the prisoner understood the underlying facts of his case. *Id.* at 362. Dr. Zapf's report demonstrates Barton understands the nature and purpose of his pending execution. He remembers facts about the events giving rise to his conviction as well as information about the victim. In addition, Barton's claim that "they're going to execute me if I can't prove my innocence" proves his understanding of where he is in the legal process and the unique legal issues he currently faces. This Court finds Barton competent to be executed under § 552.060.1.

---

[7] Barton's arguments regarding § 552.060.1 are nothing more than conclusory statements claiming he lacks the capacity to understand anything enumerated in the statute. These statements alone do not carry Barton's burden of establishing entitlement to habeas corpus relief. *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 337 (Mo. banc 2013). However, the Court will address this argument *ex gratia*.

## Conclusion

Barton has not proved the substantial threshold showing of insanity required by *Panetti* and *Ford*. Therefore, the constitutional principles announced in *Madison*, *Panetti*, and *Ford* do not render him incompetent to be executed. Additionally, Barton has not proven that he is incompetent under § 552.060. Further, Barton has not offered evidence sufficient to show actual innocence as either a gateway or a freestanding claim. Barton's petition for a writ of habeas corpus is denied.

All concur.